232 S.W.2d 219 (1950)
MURR et al.
v.
MAXWELL et al.
No. 6879.
Springfield Court of Appeals. Missouri.
July 6, 1950.
*221 Hubert E. Lay, Wm. Duke Hiett, Houston, for appellants.
Bradshaw & Fields, Jean Paul Bradshaw, John F. Low, all of Lebanon, for respondents.
McDOWELL, Judge.
This is an appeal from a judgment of the Circuit Court of Texas County, rendered on the 7th day of March, 1949, making permanent a temporary injunction, enjoining defendants from encumbering, mortgaging or changing the present status of the physical assets of the Rock Springs Free Will Baptists Church, including real and personal property belonging to the church, and from excluding plaintiffs from membership in said church, and ordering defendants to pay costs of trial.
Plaintiffs' petition for injunction was filed in the Circuit Court of Texas County on the 8th day of March, 1948, and, on that day, the court issued a temporary injunction against defendants as prayed for in the petition.
The cause was tried and judgment rendered on the 7th day of March, 1949, resulting in a judgment for plaintiffs and the making of the temporary injunction permanent. From this judgment defendants appealed to this court.
Plaintiffs' petition states,
1. That on, and prior to, the 2nd day of November, 1947, there existed in Texas County, Missouri, a Free Will Baptist Congregation known as Rock Springs Free Will Baptist Church, consisting of numerous members, who adhered to the creeds, organization and tenets of faith as recognized, taught and practiced by Free Will Baptist Churches.
2. The petition alleges that on the 12th day of September, 1927, C. S. Condon conveyed the church property in question by warranty deed to W. A. Murr, Arthur Murr and J. W. Tate and their successors and assigns, as "trustees of the Free Will Baptist Church." The petition states that Arthur Murr is one of the original trustees mentioned in the deed and Sterling Murr and W. I. Robertson are successor trustees, who succeeded W. A. Murr and J. W. Tate, trustees mentioned in the deed.
3. The petition states said church, acting through said trustees in 1927, constructed a house of worship on the lands described in the deed and affiliated itself with the Wright County Quarterly Meeting which, in turn, is a member of the Union Association of Free Will Baptist Churches.
4. The petition states that in October, 1947, and prior thereto, plaintiffs were the duly elected, qualified and acting trustees of the Rock Springs Free Will Baptist Church, were in charge of the church building and other physical property belonging to said church; that a minority of said congregation undertook to retain a pastor unsatisfactory to a majority of the members thereof and the executive committee of the Wright County Quarterly Meetings with which the church was affiliated; that after plaintiff-trustees refused to encumber and dispose of the church properties requested by a former pastor, the defendants signed and delivered to plaintiff-trustees a statement reading;
"We as a standing committee of the Rock Springs Church do by request of said *222 church bring charge against you Bro. Arthur Murr for immoral conduct against the Rock Springs Church by aggrieving said church by circulating or causing to be circulated petition to divide the church and forbidding pastors or anyone to carry on the duties of the church and breaking your covenant with the church." The petition then states that no notice was given plaintiffs when the charges would be set for trial in the church.
5. The petition then states, on Sunday, November 2nd, 1947, at church services, the defendants, in order to seize the church property and encumber and dispose of it as desired by the ex-pastor of the said congregation, purported to try plaintiff-trustees on the charge set out in paragraph (4) in plaintiffs' petition and declared that by vote the church did exclude them.
6. The petition states the trial and exclusion of plaintiff-trustees was void in that it was contrary to the church doctrine, faith, principles and rules of church government, which the Rock Springs Free Will Baptist Church professed and under which it acquired the property of which plaintiffs are trustees. The petition states the church is an unincorporated religious society with well-defined doctrine and faith and adhering to the rules of church government commonly known as the "Treatise of the Faith and Practices of the Free Will Baptists," prescribed for the National Association of Free Will Baptists.
7. The petition then states, first, that the charges did not constitute written notices of specific acts of misconduct on which plaintiffs were tried and did not notify plaintiffs of date of trial in violation of Sec. III, Paragraph 4, Sub-section (c) of said Treatise.
The petition states that the trial was not at a meeting properly called or conducted as required by law in that the defendants failed to introduce testimony in support of the charges against plaintiff-trustees and declined to hear plaintiff-trustees in their own defense in violation of Section III, Paragraph 4, Sub-section (d) of said Treatise.
The petition pleads the trial was void because it was not called to hear any charges against plaintiffs and that the subject was not legally brought up by a motion properly sustained in violation of Section III, Paragraph 4, Sub-section (b) of said Treatise.
The petition states the trial was void because no vote was ever taken upon the guilt or innocence of the plaintiff-trustees of the charges made in violation of Section III, Paragraph 4, Sub-section (d) of said Treatise.
The petition states the trial was void because the meeting was not properly conducted as the congregation did not make an order of expulsion or of guilt or innocence, but purported to exclude plaintiffs without defining the meaning of the charge in violation of Section III, Paragraph 4, Sub-section (e) of Treatise.
8. The petition then pleads that defendants caused false and misleading entries to be made in the minutes of the church records; that by using the word "excluding" it is not clear if the church meant to expel plaintiffs from membership and, if so, such action would prevent plaintiffs from joining any other Free Will Baptist Church, depriving them of their legal ecclesiastical rights to worship and if "exclude" means only to hold office in the church, then it placed a cloud upon the title of these plaintiffs as trustees of the real estate and physical assets of said congregation and threatens to interfere with their lawful control of said church property.
9. The petition then states the defendants are illegally attempting to drive plaintiff-trustees from the use of the premises so that a minority of the congregation may encumber and dissipate the physical assets of the church in violation of the deed of conveyance.
10. The petition states that in January, 1948, defendants and other members of the congregation purported to elect the defendants Dave Black, Austin Robertson and Frank Smart as successor trustees to plaintiff-trustees, which action is void because plaintiffs were the duly elected, qualified and acting trustees of the church.
11. The petition states that they, as the duly elected and acting trustees of the church, are vested by said church with the *223 care, custody and control of the church property and they bring this action as trustees for said church and as members in behalf of all present members of the Rock Springs Free Will Baptist Denomination and bring the suit to avoid a multiplicity of suits and have no adequate remedy at law.
In the prayer of the petition, plaintiffs ask (1) that defendants be restrained from encumbering, mortgaging, removing or otherwise changing the present status of the physical assets of the Rock Springs Free Will Baptist Church, including the real and personal property thereof; (2) from interfering with plaintiff-trustees in their care, custody and control of the physical assets of the church and real property, and (3) from enforcing the order excluding or expelling plaintiff-trustees from good standing in said church in so far as that order was based upon the charge tried by the congregation November 2nd, 1947.
Upon this petition the court issued the following temporary injunction, omitting caption:
"Upon reading the petition of plaintiffs, it appearing that the plaintiffs, upon the facts stated in the petition, are entitled to the relief prayed for, it is ordered that a temporary injunction be granted herein enjoining the defendants and each of them (1) from encumbering, mortgaging, removing or otherwise changing the present status of the physical assets of Rock Springs Free Will Baptist Church, including the real and personal property thereof, (2) from interfering with the plaintiff-trustees in their care, custody and control of the physical assets of said church, including all real and personal property belonging to said church, and (3) from making, promulgating, circulating or enforcing any alleged order or finding purporting to exclude, excummunicate or expel the plaintiff-trustees from membership in good standing in said Rock Springs Free Will Baptist Church insofar as the same shall be predicted on quoted complaint appearing in paragraph numbered 4 of the petition herein and the action purported to have been taken by defendants and others against the plaintiff-trustees at a meeting of said congregation in said church on November 2, 1947, until the further order of this court, upon the plaintiffs filing with the clerk a bond in the sum of One Thousand Dollars ($1000.00), condition as required by law, * * *."
The defendants, in their answer, state that plaintiffs' allegations in paragraphs 1, 2 and 3, pertain to ecclesiastical matters not subject to review by the court.
The answer admits there existed in November, 1947, a Free Will Baptist congregation known as Rock Springs Baptist Church and the members thereof adhere to creeds, organization and tenets of the faith as recognized, taught and practiced by the Free Will Baptist Churches. It admits the conveyance of the church real estate as pleaded in plaintiffs' petition, but the answer denies that Sterling Murr and W. I. Robertson are now successor trustees of W. A. Murr and J. W. Tate and deny that Arthur Murr is now the duly appointed, qualified and acting trustee. The answer admits the erection of the church building as pleaded by plaintiffs and that it is affiliated with the Wright County Quarterly Meeting, which as a member of the Union Association of Free Will Baptist Churches.
The answer admits the charge against each of the plaintiffs as pleaded by plaintiffs in paragraph 4 of the petition, except defendants state the charges were dated October 18, 1947. The answer admits that the church is an unincorporated religious society adhering to rules of government known as Treatise of Faith and Practice of the Free Will Baptist Churches.
The answer then denies each and every other allegation of the petition.
The answer then pleads, in paragraph 7, that, on January 19, 1935, Arthur Murr left Missouri and Albert Bresler was duly elected trustee to succeed Arthur Murr; that Bresler served from the 19th day of January, 1935, to July 5, 1947, and was the duly elected, qualified and acting trustee of said church. The answer states Albert Bresler resigned as trustee on the 5th day of July, 1947, and his resignation was accepted at a regular meeting on that day, and no successor has been elected to take his place; that Arthur Murr, unlawfully and *224 without authority, or appointment by members of said church, held himself out as trustee.
In paragraph 8 of defendants' answer, they plead that prior to November 2, 1947, plaintiffs, by written and verbal notices, attempted to bar the duly elected pastor from preaching in said church building and brought charges which were untrue and, by reason of said acts, Lee Maxwell, C. E. Pembrook and E. H. Freeman, defendants, delivered written charges, on the 18th day of October, 1947, to plaintiffs; that said charges were read by the pastor at a regular meeting on October 19, 1947; that on Sunday, October 26, 1947, at the regular meeting, the pastor publicly announced the charges would be heard on November 2, 1947, and that plaintiffs, Arthur Murr and Sterling Murr, were present when said announcement was made. The answer states that, after the regular meeting November 2, 1947, the moderator called the congregation into conference to take up business matters; he announced that the hearing would proceed on charges filed against plaintiffs; the charges were read and, after full discussion and presentation of facts to sustain the charges according to custom, practice and procedure of said church, each plaintiff, there present, was asked if he had anything to present in his behalf and each refused; a vote was taken on each plaintiff, which resulted in their exclusion from membership by a majority of members present.
In paragraph 9 of the answer, the defendants plead that, at a regular business meeting of the church, held on January 3, 1948, the majority of members present elected Dave Black, Austin Robertson and Frank Smart as successor trustees of said church and they are now the duly elected, qualified and acting trustees.
We here state such facts as we deem necessary to a proper solution of the issues.
It is admitted in the pleadings that there existed in Texas County, Missouri, as unincorporated Free Will Baptist Congregation known as Rock Springs Free Will Baptist Church, with well defined doctrines and faith and that it adhered to the rules of Church government commonly known as the Treatise of the Faith and Practices of Free Will Baptists prescribed for and adhered to by the National Association of Free Will Baptists.
It is admitted that in 1927, one C. S. Condon, conveyed by general warranty deed, the land described in plaintiffs' petition to W. A. Murr, Arthur Murr and J. W. Tate and their successors and assigns as trustees of said Free Will Baptist Church.
It is admitted that a church house was erected on the lands so conveyed by C. S. Condon, in trust, by the congregation as a whole.
The facts show that there was an old church wherein this congregation worshipped prior to the erection of the new church; that it was torn down and a part used in the erection of the new church, the balance sold and the proceeds used in the erection of the new church.
It is admitted that this church affiliated itself with the Wright County Quarterly Meeting, which, in turn, was a member of the Union Association of Free Will Baptist Churches.
It is admitted the church filed charges against plaintiffs, charging them with immoral conduct against the Rock Springs Church by aggrieving said church by circulating or causing to be circulated a petition to divide the church and forbidding pastors or anyone to carry on the duties of such church and breaking their covenants with the church as alleged in plaintiffs' petition.
It is further admitted that copies of these charges were served upon the plaintiffs by delivering to them a copy of the petition containing the charges as pleaded in plaintiffs' petition, Saturday, October 18, 1947. There is no dispute in the testimony to the fact that these charges against the plaintiffs were read at a regular church meeting on a Sunday, one week before the alleged trial, to-wit, on the 26th day of October, 1947.
It was admitted that W. A. Murr and Arthur Murr were present on Sunday, October 26th, when the charges were read in open church and heard the announcement that these charges would be tried on Sunday, November 2nd, at the regular church *225 meeting. Plaintiff W. I. Robertson was not present but admits that he was informed of the charges having been read in church and that he and the other two plaintiffs employed a stenographer to be present at the trial on November 2nd, and take the testimony.
The testimony shows that on January 3, 1948, at a regular meeting of the church, a conference was called by the moderator and a motion was made, seconded and approved, that the former trustees, Arthur Murr, Sterling Murr and Ira Robertson discontinue their office as trustees and Dave lack, Frank Smart and Austin Robertson were elected successor trustees.
It is admitted that Arthur Murr was the original trustee named in the deed executed by C. S. Condon when the church property was conveyed in 1927 to this church. The evidence conclusively shows that the three original trustees were never elected by the congregation but were selected by W. I. Robertson and, at the time they were named trustees in the deed, there was no office in the church designated as trustees. The evidence further discloses that W. A. Murr was never elected by the congregation of this church to be a trustee but holds that position because of his appointment in the deed of conveyance from C. S. Condon.
It is admitted that a trial was held by the congregation in the church on November 2, 1947, which resulted in a vote excluding the plaintiffs from membership in the church.
Plaintiffs' petition states that the defendants are attempting permanently to drive plaintiff-trustees and other members of the congregation from the use of the premises so that a minority of the congregation may encumber and dissipate the physical assets of the church in violation of the deed of conveyance by which said congregation acquired said property. The only evidence offered to substantiate this charge offered by plaintiffs is that the church, at a regular meeting held January 3, 1948, elected three successor trustees to plaintiffs. No where does the record disclose that these trustees, or anyone acting on behalf of the church, ever attempted to encumber or dispose of any of the church properties or attempted to exercise control over said properties in any manner.
In paragraph 11 of plaintiffs' petition, they plead that they are the duly elected, qualified and acting trustees of the church and, as such, have care, custody and control over the church property.
Under this heading the testimony shows that the original trustees were not trustees selected by the church and that, in fact, the office of trustee was unknown to this church at that time.
Plaintiffs offered no testimony that the original trustee, W. A. Murr was ever elected a trustee by the congregation of this church but the facts show that he holds that position solely by being appointed trustee in the deed of conveyance.
W. I. Robertson, one of the plaintiffs, testified that he had been a member of this church since it was built; that he purchased the property from C. S. Condon for $20.00 and had it deeded to Arthur Murr, W. A. Murr and J. W. Tate, trustees for said church. We quote his testimony:
"Q. From whom did you buy it, Mr. Robertson? A. Bought it from C. S. Condon, Clifford S. Condon.
"Q. Who designated the men to whom this property was to be deeded? A. I did that myself.
"Q. Did you pick the three men? A. Yes, sir."
This witness testified that he had the property deeded to the three original trustees for the benefit of the Rock Springs Free Will Baptist Church, before the church building was built. He stated the church was built by donations of money and labor by every one in the community. We quote again from his testimony:
"Q. Now, did your church at that time have any officer known as a Trustee, was there any such thing known as a Trustee to the Free Will Baptist Church? A. No, sir. * * *
"Q. When did you first start acting as trustee? A. Something near '35. I wouldn't say exactly.
*226 "Q. And did you serve as trustee with Edgar Pembrook and Albert Bresler? A. I served withyes, sir."
And then the witness stated he served with Arthur Murr also. This witness testified that he succeeded Arthur Murr as trustee but he didn't know how long it had been. There was no testimony to show that he was ever elected trustee by the congregation. The testimony showed he acted but that was all.
Sterling Murr, one of the plaintiffs in this case, testified as follows:
"Q. Are you an officer of that Church? A. No, sir, I am only a member. * * *
"Q. Now, Mr. Murr, about how long have you been a member of this Rock Springs Church? A. Three years last August, I believe it was.
"Q. And when did you first assume the duties as Trustee? * * * A. Well, I imagine around two years ago.
"Q. Whom did you succeed? A. Edgar Pembrook."
Arthur Murr testified that he was a member of this church and had been since it was built; that he helped with the construction of the new church. He gave this testimony:
"Q. Didn't know anything about it? Now, then, you haven't acted as a Trustee throughout all this time, have you? A. Yes, sir, I have when I was there.
"Q. Well, now, Mr. Murr, when did you leave Texas County? A. Well, I have made several trips to California.
"Q. When did you go the first time? A. I went the first time in 1917.
"Q. And who was elected,do you know who was elected to take your place? A. I didn't belong to the Church then. * * * I don't know, only just what I heard. I didn't know anything about it until I came back in 1941, that they had ever put anybody in in my place. * * *
"Q. You were never elected as trustee after you came back, were you? A. No, sir."
The evidence shows that plaintiffs, acting as trustees of the church, had a disagreement with the acting pastor of the church, Lee Maxwell, and some of the other brethren of the church relative to the reinstatement of a former pastor, Jones. The evidence shows that 19 of the members of the church, including the plaintiffs, filed charges against Jones, the acting preacher of the church, with the Wright County Quarterly Executive Committee; that the Executive Committee came to the Rock Springs Church and held a conference with the members thereof; that Jones apologized to the church for any wrongs he might have done and resigned.
The evidence shows that the defendants in this case attempted to get Jones restored to good standing in the church and solicited the plaintiffs to join with them and a dispute arose between the plaintiffs and the defendants, which resulted in plaintiffs serving a charge on Maxwell, forbidding him to carry on as preacher in the Rock Springs Church.
Sterling Murr testified as follows:
"Q. And you say you supported him for about a month? A. Yes, sir.
"Q. And then you fell out with him, didn't you? A. Well, when he wanted me to tear up the work of the Executive Board* * *
"Q. All right. Then after about a month, then, when you didn't like what Maxwell was doing, you got up a charge against him, or assisted in a charge against him, didn't you? A. Yes, sir, when I couldn't do what he wanted me to.
"Q. So then you accusedyou signed this charge against Maxwell? A. Yes, sir.
"Q. Who else signed it? A. Arthur Murr * * * and Ira Robertson."
It is admitted by plaintiffs that they served a written charge on Lee Maxwell, the preacher, to not hold any more services in the church.
The testimony, relative to the charges against plaintiffs, is as follows: Lee Maxwell, the preacher, Emmett Freeman and Edgar Pembrook, on Saturday, October 18th, 1947, served a copy of the written charge pleaded in plaintiffs' petition upon each of the plaintiffs. The evidence shows *227 that prior to the filing of this charge, these three men, the preacher and the other two, being deacons, first went to each of the plaintiffs to try to settle their difficulties. Lee Maxwell testified as follows:
"Q. And when the three of you went to them what happened,did they come to any agreement or did they apologize? A. They wasn't going to do it at all.
"Q. All right, what did you do next then? A. We brought it back to the church and reported to the church what was done. * * *
"Q. And then what was done? A. The church made a motion that they take action. * * *
"Q. Well, that is ruled out. Tell me what was done next. A. Well, afterwards then we brought the orders against them, gave them the charges there for immoral conduct against the church, for aggrieving the church. * * *
"Q. And who signed it? A. Lee Maxwell, Una Halliburton, C. E. Pembrook, E. H. Freeman and Herschel Freeman. * * *
"Q. Did you serve a copy of these exhibits here on each one of the defendants? A. That's right."
It is admitted that these exhibits were charges filed by the Rock Springs Baptist Church against plaintiffs as pleaded in plaintiffs' petition.
There is no dispute that Lee Maxwell, Emmett Freeman and Edgar Pembrook served copies of these charges on each of the plaintiffs, Saturday, October 18th, 1947; that church was had on the Sunday following, nothing was said about the charges but, on the next Sunday, at church, the charges were read to the congregation by the minister, who is the moderator of the church, and that, at that time, he announced there would be a hearing on these charges on the next Sunday, to-wit, the 2nd day of November.
It is admitted that Sterling Murr and Arthur Murr were present on October 26th, when these charges were read and W. I. Robertson was not present but was told that said charges were read and he was informed of the date they were to be tried. Then the plaintiffs admit they employed jointly a stenographer to take down the proceedings of the trial to be held November 2, 1947. There is no dispute that they were present at church on the Sunday the charges against them were taken up. There is no dispute that the regular preaching services were first conducted and when such services were finished, Lee Maxwell, the moderator, stated they had some business to take care of and proceeded to read the charges against each of these plaintiffs. There is some confusion as to just what did take place but the plaintiffs admit that the charges were read by the moderator and they, each, were asked if they confessed the charges, which they denied. There is no question but that the testimony shows that no witnesses were called to testify as to the charges. There is no testimony that the petition circulated by the plaintiffs against Lee Maxwell, the pastor of the church, which contained charges against him and the notice served on Lee Maxwell to not further hold meetings in the church, were introduced in the hearing nor read by anyone. The testimony does show that the plaintiffs were asked if they didn't circulate a petition, bringing charges against the pastor and if they didn't, as trustees, forbid the carrying on of church services in the church and one of the plaintiffs answered that he didn't circulate a petition, it was a charge. The testimony shows that the plaintiffs protested against the hearing and stated that they were not having a fair trial and one of the deacons of the church stated to them he wanted them to have a fair trial and would see that they got it if they would only state what they meant by a fair trial. The testimony shows each of the plaintiffs were given an opportunity to confess or deny the charges and make such defense as they wanted to but they offered no testimony.
Now, unquestionably, the testimony shows that a motion was made by one of the members of the church that they stop talking about the matter and proceed to the business that the meeting was called for and said motion had a second and the moderator then took a vote on each of the plaintiffs, separately. He appointed two tellers to circulate *228 secret ballots among the members of the church and collect and count same. The vote was about 35 to 6 in favor of excluding each of plaintiffs from membership in the church. However, the evidence does not show that they said "membership" in the vote but merely said "excluded from the church."
The testimony does show the moderator informed the members they were to vote either to exclude the members or not to exclude them. The moderator announced that the three members of the church were excluded.
The testimony further shows that on Saturday night, prior to the trial of the plaintiffs, as stated herein, there was a regular meeting of the church but this trial was not mentioned or the date thereof.
The testimony shows the plaintiffs, with other members of the church, 19 in all, filed a charge with the Executive Board of the Wright County Quarterly Executive Committee against the minister, Jones, and said Executive Board came to the Rock Springs Church and held a meeting; that Jones resigned and apologized and Lee Maxwell was selected as minister of said church by all of the members. There is a dispute as to whether the difficulties of the church were settled.
It is admitted that these plaintiffs, together with others, recalled this Executive Board to define what they had done at the first meeting and the defendants, who were officers of the church, refused to meet at this second meeting with the Executive Board.
Plaintiffs, in their petition, contend that notice of the trial in which plaintiffs were excluded from membership was not given as provided in Section III, paragraph 4, Sub-section (c) of said Treatise. That section reads as follows: "(c) If members are to be tried for misconduct, written notices of the charges and specifications of the same should be furnished to those accused, at least one week before the trial."
Under paragraph 7, Sub-section (b) in plaintiffs' petition, they state the meeting or trial was not properly called and conducted as required in Section III, paragraph 4, sub-section (d) of said Treatise. Subsection (d) of said Treatise reads as follows: "If the charges are not confessed, the trial proceeds in regular order by the presentation of testimony, without personal disputation, or "remarks from those not church members."
Plaintiffs' petition pleads, in paragraph 7, sub-section (c) that the trial was improper because the congregation was not convened for hearing any charges against plaintiffs, that the subject matter was not legally brought up for disposition by motion properly sustained, as provided in Section III, paragraph 4, sub-section (b) of the Treatise, which sub-section (b) reads as follows: "No conversation or discussion is proper upon any subject not distinctly before the meeting by a regular motion properly sustained."
Plaintiffs plead in their petition, paragraph 7, that the trial was improper because the vote was not taken upon the guilt or innocence of the plaintiff-trustees on the charges so made in violation of Section III, paragraph 4, Sub-section (d). We have set out subsection (d) above in this findings of fact.
In sub-section (e) of plaintiffs' petition, paragraph 7, plaintiffs state that the trial was improper because the congregation did not make an order of expulsion or of guilt or innocence but purported to "exclude" the plaintiff-trustees without defining the meaning thereof and cites Section III, paragraph 4, sub-section (e) of the Treatise, which reads as follows: "Questions of fellowship, expulsion, and all other items of business of the church shall be settled, by a vote of the majority present, and this action shall be final provided public announcement of the intended action is made at the last previous regular meeting; and the Quarterly Meeting has no power to reverse it, but may, if deemed necessary, withdraw the hand of fellowship from a church as a whole when its action is inconsistent with sound doctrine of Christian polity."
Under paragraph 8 of plaintiffs' petition, they plead that under Section V, paragraph 3, of the Treatise, they will be prevented from joining any other Free Will Baptist *229 Church in the nation, depriving them of their legal and ecclesiastical right to worship and affiliate themselves with the faith of their choice and that the excluding of plaintiffs from holding office in the congregation would result in placing a cloud upon the title of these plaintiffs as trustees of the above described real estate and physical assets of said congregation, and threatens to interfere with their lawful control of said church. Paragraph 3, of Section V of the Treatise reads as follows: "Persons expelled from sister churches for any cause, or from any church for immorality, should not be received to fellowship without first giving satisfaction to the church from which they are expelled."
Section V of the Treatise, introduced in evidence, and, under which it is admitted that the church in question conformed in its government, is entitled, "Government of the Church." Paragraph 1, under that title, reads as follows: "The local church is an independent body, so far as relates to its own government, the transaction of its business, the choice of its officers, and the discipline of its members."
Section VI of the Treatise, paragraph 1, under heading of "Discipline of the Church," reads as follows: "Personal offences and trials are to be settled according to Matthew 18:15-17. Public offences are to be considered as against the church, which by its officers, is to pursue the same course as required in the case of individuals. See Section II."
Paragraph 2, under Section VI reads: "When a minority of a church is aggrieved with the action of the majority, a council may be called by mutual agreement, or requested of the Quarterly Meeting. Such council may be called simply for advice, or as a board of arbitration, whose decision shall be final."
Under Section II of the Treatise of the Faith and Practise of the Free Will Baptists, entitled, "Officers of the Church," it is provided: "The church then proceeds to elect its officers, which are a clerk, a treasurer, a pastor who acts as moderator in all church meetings, and a board of deacons, who, with the pastor, clerk and treasurer, constitute a committee to promote order, activity, attendance on the means of grace, and efficient disciple of the church. Deacons should possess sound piety, good business capacity, and large benevolence; they should be ordained by prayer and the laying on of hands by the presbytery; that hold their office for life, or during the maintenance of good moral character and sound doctrine; they assist at baptism and the Lord's Supper, have care of the poor, and conduct religious meetings in the absence of the pastor."
Under Section III, of the Treatise, headed "Meetings of the Church," paragraph 2, "A monthly church conference, or covenant meeting, is established, at which every member, or so far as practicable, should report personally or by letter." Paragraph 3, "Weekly meetings appointed for prayer and conference should be regularly attended by the church; in these meetings all are at liberty to participate, regardless of office, age, sex, or condition."
"4. Meetings for business are held once in three months, generally two weeks before each session of the Quarterly Meeting, but items of business may be introduced and attended to at any regular meeting of the church.
"(a) In these meetings, if the pastor is not present, a moderator is elected; and if the clerk is absent, a clerk pro tem is elected."
The balance of this section we have already set out as referred to in plaintiffs' petition.
The final judgment of the trial court entered March 7th, 1949, after making findings of fact and conclusions of law, is as follows:
"It Is Therefore Adjudged and Decreed (1) that the issues herein be found for the plaintiffs and against the defendants; (2) that the temporary injunction heretofore granted herein be, and the same hereby is, made permanent; (3) that the defendants, and each of them, their agents, and employees, and all persons claiming under them or acting under the direction or authority of them, or either of them, be, and they are hereby, perpetually enjoined and *230 restrained from encumbering, mortgaging, removing or otherwise changing the present status of the physical assets of Rock Springs Free Will Baptist Church including the real and personal property thereof, and from interfering with the plaintifftrustees in their care, custody and control of the physical assets of said church including all real and personal property belonging to said church, and from making, promulgating, circulating or enforcing any alleged order or finding purporting to exclude, excommunicate or expel the plaintifftrustees from membership in good standing in said Rock Springs Free Will Baptist Church insofar as the same shall be predicated on quoted complaint appearing in paragraph number 4 of the petition filed herein and the action purported to have been taken by defendants and others against the plaintiff-trustees at a meeting of said congregation in said church on November 2, 1947, and (4) that the defendants be, and hereby are, required to pay the court costs taxed in this proceeding."
In this opinion we shall refer to appellants as defendants and to the respondents as plaintiffs.
In passing upon the issues involved in this case, it is the duty of the court to review the evidence and determine the correctness of the chancellor's rulings. We defer to the trial court's findings where the evidence does not convince us that such findings are incorrect. When the evidence does so convince us, then we must make our own findings of fact. Trett v. Lambeth, Mo.App., 195 S.W.2d 524; Hastings v. Hudson, 359 Mo. 912, 224 S.W.2d 945, 950.
In determining the issues we are guided by certain definite legal principles. In Commission Row Club v. Lambert, Mo.App., 161 S.W.2d 732, 736, the court states the purpose of an injunction as follows:
"The purpose of injunction is to restrain acts, actual or threatened; it is frequently termed `the strong arm of equity', or a "transcendent or extraordinary remedy'; the injury must be real, not imaginary. It is one which is to be used sparingly and in clear cases only, and the decree should be so framed as to afford the relief to which the complainant is entitled, and not to interfere with legitimate and proper action on the part of those against whom it is directed. * * *
"The decree must conform not only to the evidence but to the pleadings. Sinclair Refining Co. v. Wyatt, 347 Mo. 862, 149 S.W.2d 353."
If the decree of the trial court does not meet with the approval of this court, we may render such judgment as, in our opinion, the trial court should have rendered and direct the judgment of the trial court to be corrected to conform to our opinion. Commission Row Club v. Lambert et al., supra.
The judgment of the trial court restrained the defendants, their agents and employees, and all persons claiming under them or acting under the direction or authority of them, from encumbering, mortgaging, removing or otherwise changing the present status of the physical assets of the Rock Springs Free Will Baptist Church, including the real and personal property thereof, and from interfering with the plaintiff-trustees in their care, custody and control of the physical assets of said church, including all real and personal property belonging to said church and from making, promulgating, circulating or enforcing any alleged order or finding purporting to exclude, excommunicate or expel the plaintiff-trustees from membership in good standing in said Rock Springs Free Will Baptist Church insofar as the same shall be predicated on quoted complaint in paragraph numbered 4 of the petition filed herein and the action purported to have been taken by the defendants and others against the plaintiff-trustees at a meeting of said congregation in said church on November 2, 1947, and that defendants pay the cost of the proceedings.
Under points and authorities defendants complain of four separate assignments of error. These assignments not only contain the complaint made against the findings of the trial court but, also, contain much argument. We shall here try to determine what errors are actually complained of.
Assignment of error No. I is as follows: "The court's decree and its findings as grounds therefor are contrary and contradictory, *231 not only to the facts in this case, but also to the well recognized and established law in the case."
Assignment No. II is, "The court erred in not finding his judgment and decree for the defendants for the reason that the plaintiffs should be required to first exhaust the remedies within the church before resorting to the civil courts. * * *."
Assignment No. III is, "The judgment of the court is for the wrong parties for the reason that there is no evidence at all to support said judgment. There is no evidence that the acts against which plaintiffs asked protection were threatened or that such acts will in all probability be committed, to their injury."
Assignment No. IV is so long that we shall refer to it merely as complaining that the court's judgment is too broad and is not warranted by the evidence and under the pleadings.
We cannot agree with defendants' second assignment of error because, under the testimony, it was admitted that there was no appeal from the decision of the local church in the excluding of members from its body or from the election of successor-trustees. Therefore, the authorities cited by defendants could have no application in this case.
We will consider assignments of error Nos. I and III together as these assignments question the sufficiency of the evidence to support the judgment of the trial court.
We find that the evidence does not support the judgment of the trial court in enjoining defendants from encumbering or mortgaging the church property and from interfering with plaintiff-trustees in their care, custody and control of the assets of the church. This part of the court's judgment is entirely too broad and beyond the pleadings and the evidence.
The evidence offered by plaintiffs is that W. I. Robertson purchased from one C. S. Condon, in 1927, from the sum of $20.00, the church property in question and had it deeded to three trustees, to-wit, Arthur Murr, W. A. Murr and J. W. Tate and their successors in trust for the use and benefit of the Rock Springs Free Will Baptist Church. There was no such office as "trustee" in this unincorporated church at the time of the creation of this trust. W. I. Robertson selected the trustees, as he had a legal right to do, and he could have designated the qualifications of such trustees and, in the creation of the trust, define their duties, but he did not.
In Riggs v. Moise, 344 Mo. 177, 128 S.W.2d 632, 634, the law is stated as follows:"One who creates a trust has the freedom of choice and complete power to name his trustee so long as such trustee possesses the proper legal qualifications. * * *"
This trust conveyed the naked legal title to the trustees and vested the possession, control and use of said property in the membership of this unincorporated church. This was a charitable trust created by W. I. Robertson, who selected the trustees. There certainly is no law that limited the creator of this trust to choose trustees who were members of a church because the membership of the church had nothing to do with the creation of the trust. Gwin v. Gwin, Mo.App., 219 S.W.2d 282.
Under the law, an unincorporated church society could not take legal title to the property. Therefore, when W. I. Robertson sought to give to the church the property in question he, of necessity, had to place the title in the hands of trustees. Ervin v. Davis, 355 Mo. 951, 199 S.W.2d 366.
When the trust was created, under the deed from C. S. Condon to the three original trustees, for the benefit of the church, conveying the bare legal title and not imposing any duties upon the trustees, under the law, we must look to the surrounding circumstances to determine the right to possession, use and control. Of course, a court of equity would impose upon the trustees holding title to said property, such duties as would be necessary to accomplish the purpose of the trust if, under the circumstances, said trust could not be accomplished otherwise. Boden v. Johnson, 226 Mo.App. 787, 47 S.W.2d 155, 159.
*232 However, under "A Treatise of the Faith and Practices of Free Will Baptists", it is provided in Section III, paragraph 4, subsection (e), "Questions of fellowship, expulsion, and all other items of business of the church shall be settled, by a vote of the majority present, * * *."
Therefore, under the government of this church society, the possession, care and control of the property of the church shall be in the membership of the society and its business shall be determined by a vote of a majority of its members present and acting.
In 45 Am.Jur., page 760, Section 48, the law is stated:
"Church deacons may be made trustees for the control and management of property acquired for the benefit of their church, although one merely appointed to hold the title to property of a religious association as trustee has, by reason of that fact, nothing to do with any of the affairs of the congregation or with the property itself."
Under the law, we find the trustees of the church property, in this case, were holders of the bare legal title; that the possession, use and control of said property was in the membership of the unincorporated society; that the court erred in finding the trustees could mortgage, control or dispose of said property or, in any way, control the use thereof. Ervin v. Davis, supra, 199 S.W.2d loc. cit. 369; Burrier v. Jones, 338 Mo. 679, 92 S.W.2d 885.
We further find that under "A Treatise of the Faith and Practices of Free Will Baptists", which, by all of the parties, is admitted as the controlling doctrine of this church, the membership had full and complete possession, use and control of this property and the trial court erred in enjoining these defendants from mortgaging, encumbering or disposing of said property or from participating in the control thereof.
If the use and control of the property is in the church membership this injunction would forbid members of the church from carrying out their duties as such in exercising their legal rights. The trustees, we again state, have no legal right to so mortgage or encumber said property.
We think, under the facts in this case, the injunction granted by the trial court was too broad because property rights are not involved in this lawsuit. There is no dispute, under the facts in this case, as to church doctrine between different factions of the church and there is no evidence that the trustees elected by the church January 3, 1948, as successor trustees to plaintiffs, were not properly elected by the church, neither is there any evidence they ever attempted to control, or to, in any way, interfere with the possession of said property. Plaintiffs failed wholly to prove their allegations set out in the petition of any of the above acts.
We further find that plaintiffs, in their proof, wholly failed to show they were the duly elected and qualified trustees of the church. Arthur Murr admits he left the state and returned in 1941. He states he was not a member of the church while gone from the state, and that he was never elected trustee by the congregation after he returned, so there is just no evidence for the court to find he was the duly elected trustee of the church. The other trustees state they acted as trustees, but, nowhere, does the evidence show they were ever elected by the congregation as successor trustees. They merely assumed the duties without being properly elected. Therefore, we believe the testimony does not justify the trial court's findings of fact that plaintiffs were the duly elected, qualified and acting trustees and, if they were, under this trust, they did not have the legal possession, custody and control of the property in question because it was vested in the membership of the church.
The more serious question presented to this court is that part of the court's injunction which restrains the defendants from excluding plaintiffs from membership in the church under a trial held November 2, 1947.
Under the testimony offered by plaintiffs as their exhibit (A), being "A treatise of the Faith and Practises of Free Will Baptists", and, by the defendants, admitted to be the governing creed under which this *233 congregation acted, Section III, paragraph 4, provides, "Meetings for business are held once in three months, generally two weeks before each session of the Quarterly Meeting, but items of business may be introduced and attended to at any regular meeting of the church.
"* * * (b) No conversation or discussion is proper upon any subject not distinctly before the meeting by a regular motion properly sustained.
"(c) If members are to be tried for misconduct, written notices of the charges, and specifications of the same should be furnished to those accused, at least one week before the trial.
"(d) If the charges are not confessed, the trial proceeds in regular order by the presentation of testimony, without personal disputation, or remarks from those not church members.
"(e) Questions of fellowship, expulsion, and all other items of business of the church shall be settled, by a vote of the majority present, and this action shall be final provided public announcement of the intended action is made at the last previous regular meeting; and the Quarterly Meeting has no power to reverse it, but may, if deemed necessary, withdraw the hand of fellowship from a church as a whole when its action is inconsistent with sound doctrine of Christian polity."
Under Section V of this "Treatise", paragraph 1, is stated: "The local church is an independent body, so far as relates to its own government, the transaction of its business, the choice of its officers, and the discipline of its members."
Under Section VI of the "Treatise", it is provided: "Personal offences and trials are to be settled according to Matthew 18:15-17."
Under the 18th Chapter of Matthew, verse 15, it is provided: "Moreover if they brother shall trespass against thee, go and tell him his fault between thee and him alone: if he shall hear thee, thou hast gained thy brother.
"16. But if he will not hear thee, then take with thee one or two more, then in the mouth of two or three witnesses every word may be established.
"17. And if he shall neglect to hear them, tell it unto the church; but if he neglect to hear the church, let him be unto thee as a heathen man and a publican."
Now, under the facts leading up to the trial held November 2, 1947, of the plaintiffs, the testimony shows that plaintiffs served a written notice on the pastor of the church containing charges against him and forbidding further holding of services in the church; that Lee Maxwell, the minister, and two of the deacons went to each of the plaintiffs and talked to them but could not reach a settlement of their difficulties and took the matter to the church, where they were authorized by the congregation to file the charges of immorality against plaintiffs as set out in plaintiffs' petition and, on which, plaintiffs were tried. It will be noted that these individuals failed to go first, personally, to each of plaintiffs before taking witnesses.
On October 18th, 1947, the plaintiffs admit these same deacons, who talked to them about the difficulties, served a copy of the petition or charges upon them on which they were later tried. It is also admitted that at a regular meeting of the congregation, Sunday, October 26th, these charges were publicly read in church and plaintiffs were there notified publicly that the trial would be had at the regular church services Sunday, November 2nd, 1947. We think that under the rules governing the church, the service of notice by delivering a copy of petition to each of plaintiffs was sufficient. We also think the announcement in open church, Sunday, October 16th, that the trial would be had November 2nd was sufficient notice of the date of trial. Certainly, that is true for the two members, Arthur Murr and Sterling Murr, who were present, and W. I. Robertson admits that he was informed of the announcement of the date of trial and made preparations for the trial.
The most serious matter concerning the trial was what occurred on Sunday, November 2nd, at the trial.
*234 After regular services were conducted, the minister, who was the moderator, announced to the congregation, consisting of about sixty people, they would have a business meeting and then, without a motion, proceeded to read the charges against each of plaintiffs. He then asked each of the plaintiffs if they confessed the charges and each of the plaintiffs denied the same.
The congregation then started talking about the matter. One of the members asked one of the plaintiffs if he didn't circulate a petition making charges against the pastor and if he didn't serve written notice on the church forbidding further church services. The plaintiff answered it was not a petition but a charge and then some of the plaintiffs or their wives objected to the proceedings as not being a fair trial. One of the brethren stated they would give plaintiffs a fair trial if plaintiffs would state what one was. Finally one of the brethren made a motion that they quit fussing around and proceed with the business for which they were called. Another brother seconded the motion and the moderator then took ballots from his pocket, appointed two tellers and proceeded to take a vote of the membership on the question of whether or not to exclude each of the plaintiffs from membership. About 41 members voted, resulting in the exclusion of each of plaintiffs from membership by a vote of about 35 to 6, the balance of the members refraining from voting.
It would seem that this trial did not comply with the "Treatise" governing the trial of members in that no testimony was offered to prove the charges made and possibly there was not a sufficient motion to take up the business as required in the "Treatise" as above set out.
Under the law, questions concerning expulsion of members are purely ecclesiastical questions.
In 45 Am.Jur., Section 43, page 753, the law is declared:
"It is accepted as a general rule that the civil courts will not question or review acts of church discipline or the expulsion of members, where no question arises as to the invasion of civil or property rights." Landis v. Campbell, 79 Mo. 433, 49 Am.Rep. 239.
In Watson et al. v. Garvin, et al., 54 Mo. 353, 378, the court stated: "A deposed minister or an excommunicated member of a church, cannot appeal to the civil courts for redress. They can look alone to their own judicatories for relief, and must abide the judgment of their highest courts as final and conclusive. But when property rights are concerned, the ecclesiastical courts have no power whatever to pass on them so as to bind the civil courts. * * *"
In Olear v. Haniak, 235 Mo.App. 249, 131 S.W.2d 375, 380, the St. Louis Court of Appeals stated the law thus:
"It is settled law that when a person becomes a member of a church, he thereby submits to the ecclesiastical jurisdiction in ecclesiastical matters, and has no legal right to invoke the supervisory power of the civil courts so long as none of his civil rights are involved. 54 C.J. 87. * * *
"An ecclesiastical matter is one that concerns doctrine, creed, or form of worship of the church, or the adoption and enforcement within a religious association of needful laws and regulations for the government of the membership, and the power of excluding from such associations those deemed unworthy of membership by the legally constituted authorities of the church; and all of such matters are within the province of the church tribunals and their decisions will be respected by the civil courts. 54 C.J. 88. * * *
"The deposition or removal of a minister or pastor, and the grounds therefor, are purely ecclesiastical matters, and the civil courts will not review the decision of competent ecclesiastical tribunals in regard thereto. * * *
"In Boyles v. Roberts, 222 Mo. 613, 121 S.W. 805, in an opinion by Judge Graves, concurred in by four judges, our Supreme Court ruled as follows: `If no civil or property rights are involved, the courts accept the decrees of ecclesiastical judicatories, not because they are bound by such decrees, but because a civil court has nothing to do with the subject-matter of such decrees; * * *.' *235 "And then the court, after reviewing the decisions in other jurisdictions, [Hayes v. Manning] 263 Mo. [1], at page 42, 172 S.W. [897], at page 905, said: `The great weight of authority supports the rule announced in the foregoing cases that the decisions of the highest court of a church as to purely ecclesiastical questions within the jurisdiction of such court to decide will be accepted as conclusive by the civil courts in the determination of property rights.'"
In 45 Am.Jur. page 748, Section 40, the following law is declared: "All questions relating to the faith and practice of the church and of its members belong to the church judicatories, to which the members have voluntarily subjected themselves, since, when a person becomes a member of a church, he becomes so upon the condition of submission to its ecclesiastical jurisdiction, and however much he may be dissatisfied with the exercise of that jurisdiction, he has no right to invoke the supervisory power of a civil court so long as none of his civil rights are invaded."
In Stone v. Bogue, 238 Mo.App. 392, 181 S.W.2d 187, 189, 190, the Kansas City Court of Appeals said:
"Over matters of religious belief our courts have no jurisdiction. 45 Am.Jur. 768; Olear et al. v. Haniak et al., 235 Mo.App. 249, loc. cit. 259, 131 S.W.2d 375. * * *
"The courts are without jurisdiction to intervene in such a case except to protect the civil rights of members or to adjudicate property rights; 45 Am.Jur. 749; Note 24 L.R.A. 692 et seq."
In Briscoe v. Williams, Mo.App., 192 S.W.2d 643, 646, the court made the following statement:
"While the courts of our own state as well as those of other states have not spoken in unison on the question, there can be no doubt that the generally accepted rule is that civil courts have no ecclesiastical jurisdiction and ordinarily cannot question acts of church discipline or the removal of a pastor or member. Hynes v. Lillis, 183 Mo.App. 190, 170 S.W. 396. It is the generally accepted rule that ecclesiastical questions belong to the ecclesiastical tribunals, and their decisions thereon are binding, conclusive, and not reviewable by the civil courts, and that the removal of a minister and the grounds therefor are purely ecclesiastical matters. Olear v. Haniak, 235 Mo.App. 249, 131 S.W.2d 375; Marr v. Galbraith, [238 Mo.App. 497], 184 S.W.2d 190. On the other hand, such abstract pronouncement of the law is predicated upon the premise in any particular case that the action complained of or sought to be enforced in the civil courts has been adjudicated by a properly constituted ecclesiastical tribunal. It is inconceivable that a civil court would be compelled to blindly use the force and power of a writ of injunction to compel obedience to what is claimed to be a decision of an ecclesiastical tribunal, without first inquiring as to whether it was a properly constituted ecclesiastical tribunal in accordance with the regulations and usages of the church. In any case, the right to injunctive relief is one that appeals to the sound discretion of the court, and is to be used sparingly in clear cases only and the decree should be so framed as to afford the relief to which the complainant is entitled and not to interfere with the legitimate and proper action on the part of those against whom it is directed. Commission Row Club v. Lambert, Mo.App., 161 S.W.2d 732."
In this case the complainants sought injunctive relief against a minister that they had excluded from the church. Of course, where one seeks equity they must make a clear case to justify the strong arm of the law in interfering and would necessarily have to show that they had excluded the minister according to their church creed.
There can be no doubt as to the declaration of law made in this case by the court that if there were a fraudulent scheme on the part of members in excluding other members in order to control the property of the organization or misappropriate it or divert it from its original channel, then equity would inquire into the actions" of such members as to whether or not they had followed the creed and doctrine of the church in expelling such members.
*236 Likewise in Trett v. Lambeth, supra, decided by this court, the question presented to the court is where a part of the congregation became opposed to the doctrines of the original church and undertook to acquire the possession and control of the church property. This court held that injunction was the proper remedy to settle the rights of two discordant factions of a church congregation in respect to use and control of church property and cited Clevenger et al. v. McAfee et al., 237 Mo.App. 1077, 170 S.W.2d 424, and other authorities.
There is no doubt that where civil rights are involved, civil courts are not bound by the findings of ecclesiastical bodies but will look into all of the facts to determine whether or not the actions of such ecclesiastical bodies were in accordance with their church government.
This court, while recognizing that equity courts will take jurisdiction where property rights or civil rights are involved, states the law thus:
"Controversies over theological questions are within the exclusive jurisdiction of ecclesiastical courts and civil courts are not concerned therewith. * * *"
Under the facts in this case this court was justified in stating, "While not assuming to pass upon purely ecclesiastical questions, this court will, however, inquire into the question of whether there was a meeting properly called and properly conducted at which purported congregational action was taken.
The difficulty in the case at bar did not arise out of a desire of a part of the congregation to obtain control of church property but it arose out of a dispute between the plaintiffs and the defendants representing the church over the restoring of a former minister to good graces in the church. The climax of the trouble came when the plaintiffs circulated a petition or a "charge" as they called it, among members of the church against Lee Maxwell, the minister, and their going still further and serving written notice upon the minister of the church to cease holding services.
There is no doubt that this conduct, on the part of plaintiffs, was beyond their power to act had they been elected and acting trustees of the church. We cannot pass upon whether or not this conduct on the part of plaintiffs constituted the charge of immorality against the church and this court has no jurisdiction to say what kind of conduct would make a chargeable offense of immorality against the church, but we do hold there was no division between the members of this church as to creed, there was no rebellion from the doctrines of the church, but it is solely a question as to whether or not these plaintiffs were guilty of misconduct and, in our judgment, the cases cited by the plaintiffs do not sustain their contention under their points and authorities numbered I, that there are two discordant groups of trustees seeking to exercise conflicting control over the church property.
In the case at bar it is clearly distinguishable from Trett v. Lambeth, supra, decided by this court. As we stated before, in Trett v. Lambeth, there was a question of where a discordant element of the church rebelled from the established doctrine of the church and undertook to seize the property thereof.
Missouri Wesleyan College v. Shulte, 346 Mo. 628, 142 S.W.2d 644, is no authority to show that title to real property was involved in this suit. In that case they held the corporation could bring the suit even though the subscription was made to the trustees; that the corporation was the real party in interest.
Briscoe v. Williams, supra, is no authority for plaintiffs' contention because, in this case, the plaintiffs sought an injunction to enforce an order of expulsion against its minister. The court properly held that a court of equity would not blindly use the power of injunction to compel obedience to the decision of an ecclesiastical tribunal without first inquiring into whether or not such tribunal was properly constituted according to the usages of the church. Injunction is not a writ of right but is an appeal to the conscience of chancery and to his sound discretion.
*237 In Ervin v. Davis, supra, cited by plaintiffs, another case where property is directly involved and, on the facts, is no authority to support plaintiffs in this case. The court held in that case that the trust created was not a charitable trust but the property was purchased by the church and, by it, paid for and title taken in the name of the church trustees. It distinguished that case from Marr v. Galbraith, supra, in which the trust created was the same as in the case at bar.
Thus, all of the cases cited by plaintiffs, as to the law in Missouri, are not in point on the facts because they involve property interests.
Plaintiffs' second point, in which they contend that the expulsion of plaintiffs was void because the procedure of the church "Treatise" was violated, cites cases involving property and civil rights. They say nothing about the general rule in Missouri that where purely ecclesiastical matters were involved, such as the expulsion of members, civil courts will not take jurisdiction unless property or civil rights are involved.
Under plaintiffs' contention numbered III, that the injunction is not too broad, we cannot agree because of the reasons heretofore set out in this opinion.
We do agree with plaintiffs' contention numbered IV, and we disagree with defendants' contention No. II, because, under the church doctrine in the case at bar, there was no appeal to a higher body in the church from the expulsion of members. However, we do not agree with plaintiffs that civil courts will take jurisdiction from purely ecclesiastical acts of the church.
In plaintiffs' contention numbered V, we agree, under Supreme Court Rule 1.08, that assignments of error neither briefed nor argued are abandoned on appeal but, we hold, under assignments of error in defendants' brief under points Nos. I and III, that they have raised the point of the sufficiency of the evidence to support the judgment of the trial court, and, under these assignments of error, we held that the evidence did not support the trial court's judgment that title was involved; that plaintiffs had been duly elected and qualified trustees of the Rock Springs Free Will Baptist Church and we certainly hold that, regardless of whether or not plaintiffs were trustees, under the trust shown in evidence, the trustees only held the bare legal title in a charitable trust; that the trustees did not have possession, control or the power to govern the use of the church, that power being vested in the membership of the church. Therefore, the trial court was not justified in enjoining defendants from mortgaging, encumbering or, in any way, participating in the controlling of said property because, as deacons and members of the church, they had a right to vote on how the property should be used and as successor trustees they would have no power to mortgage, encumber or dispose of said property in any way.
We now hold that, since the courts in this state have held that the right to expel a member from the church is purely an ecclesiastical right and, since no property or civil rights are involved, and that the evidence does not show the newly elected successors in trust ever attempted to interfere in any way with any rights that plaintiffs mights have in the control of said property or the holding of bare legal, title, the trial court erred in enjoining the defendants in the second part of his judgment from interfering with plaintiff-trustees from making, promulgating, circulating or enforcing any alleged order or finding purporting to exclude, excommunicate or expel plaintiffs from good standing in Rock Springs Free Will Baptist Church predicated on complaint appearing in paragraph IV, of plaintiffs' petition taken at a meeting of the church on November 2nd, 1947.
Judgment is reversed and the cause remanded with instructions to dissolve the injunction and enter a judgment for the defendants.
VANDEVENTER, P. J., and BLAIR, J., concur.