P. M. MARR ET AL., APPELLANTS, v. FRANK GALBRAITH ET AL., RE-
SPONDENTS.—184 S. W. (2d) 190.

Kansas City Court of Appeals.   December 4, 1944.

498

*W. H. Utz, Jr.* for appellants.

 

*K. D. Cross* and *Breit & Roberts* for respondents.

CAVE, J.—This is a suit by the plaintiffs (who compose the Board of Trustees of the Missouri Conference of the Methodist Church), seeking to recover from the defendants, as trustees of the Walnut Grove Methodist Church and as individuals, the sum of $1200, which is the proceeds of a fire insurance policy carried by the defendants on the Walnut Grove Methodist Episcopal Church house, which was destroyed by fire in July, 1936. Trial to the court, judgment for defendants, and plaintiffs appeal.

For clarity we shall continue to refer to the parties as they were in the trial court, plaintiffs and defendants.

The record discloses that in the late 1880's one E. O. Wells, and one Edmonds, who were ministers of the Methodist Episcopal Church, held religious services at what was called the Radical School House, in Andrew County, Missouri. By 1889 they had formed a congregation of the Methodist Episcopal Church and had elected trustees. The first entry in the minute book of the trustees on June 6, 1889, among other things, recites: "The trustees of the M. E. Church met at J. C. Wickards. Members present, C. Edleman, A. Redkey, O. K. Hornby, Rev. J. W. Kinzer, acting as chairman. Board proceeded to organize by electing C. Edleman chairman, A. Redkey secretary and O. K. Hornby treasurer. Moved and seconded that in addition to the board the following persons act as solicitors for subscriptions to build an M. E. Church house on the farm of J. C. Wickard north of the present graveyard. . . ." Thereafter, the trustees met from time to time getting estimates on the cost of the building and reporting the amounts raised by subscriptions. On August 28, 1889, the Board of Trustees met and the minutes recite: "Deeds to ground read and received. . . . Motion to build church. . . ." The minutes describe the size and kind of church building and authorized the employment of a general foreman.

On September 17, 1889, the Board of Trustees met and one of the entries in the minutes is: "Moved and seconded that J. W. Kinzer and A. Redkey make such alteration in deed that it may conform with the discipline. Motion carried." On May 12, 1890, the Board of Trustees met again and the minutes disclose the following: "A. Redkey as committee on deed presents form with proposed change. Moved and seconded that the board accept form as presented and that J. C. Wickard give a new deed. Motion carried." The church building was dedicated May 25, 1890. "The full amount of the indebtedness being accounted for by subscription. . . ."

The deed, which was finally accepted by the trustees from Wickard was acknowledged August 23, 1890, although it recited at the beginning thereof that it was dated "August 23, 1889." The material parts of said deed are as follows:

"This identure, made on the 23 day of August A. D. One Thousand Eight Hundred and Eighty Nine, by and between Joel C. Wickard of Andrew County, Missouri party of the first part, and O. K. Hornby, H. M. Smith, Alonzo Redkey, and Cornelious Edleman Trustees for the Methodist Episcopal Church of the County of Andrew in the State of Missouri parties of the second part,

"Witnesseth that the said party of the first part, in consideration of the sum of One Dollar, to him paid by the said parties of the second part, the receipt of which is hereby acknowledged do by these presents Grant, Bargain and Sell, Convey and Confirm, unto the said parties

of the second part, and their successors in office the following described lots, tracts or parcels of land lying, being and situate in the County of Andrew and State of Missouri, to-wit:, . . . *In trust that said premises shall be used kept and maintained as a place of Divine worship for the use of the ministry and membership of the Methodist Episcopal Church in the United States of America. When the aforesaid church is not in use by the said M. E. Church it shall be free for the use of any other Evangelical denomination.*

*"But shall not be used for festivals and such like, and also with the condition that when the above described land ceases to be used for church purposes is to become the property of Joel C. Wickard or his heirs, and assigns.*

*"And it is further agreed that said Trustees keep said property fenced with 3 boards and two wires.*

*"To have and to hold the aforesaid, with all and singular the rights, privileges, appurtenances and immunities thereto belonging, or in anywise appertaining, unto the said parties of the second part, and unto their successors in office, with the above conditions forever; . . ."* (Italics ours.)

The Walnut Grove M. E. Church was in the bounds of the Missouri Annual Conference of the M. E. Church on the St. Joseph District, but since 1939 it has been in the bounds of the Maryville District. It should be observed here that on May 10, 1939, "The Methodist Episcopal Church; The Methodist Episcopal Church, South, and The Methodist Protestant Church" by proper proceedings united and adopted the name "The Methodist Church"; hereafter it will be referred to and considered as such.

The Methodist Church has an Episcopal type of government. The General Conference, which meets every four years, is the supreme legislative body of the church and authorizes the publication of its rules, regulations and laws in a book known as the *Book of Discipline of the Methodist Church.* In addition to the General Conference the church's constitution authorizes a Judicial Council, which is the supreme judicial authority of the church. By virtue of the authority of the Discipline an annual State Conference may, with the consent of the presiding bishop, a majority of the district superintendents and the approval of the district board of church location, declare any local church discontinued or abandoned and order the local board of trustees to dispose of the assets in their hands in accordance with the direction of the Annual Conference.

Trustees of local churches are required by the Discipline to hold all church property, using as much of the proceeds as may be needful to pay debts or to make repairs. They shall be amenable to the quarterly conference. They shall invest trust funds coming into their control. They shall deposit trust funds in Savings Banks or invest them only in securities which are lawful for Savings Banks or Trustees. They

shall make an annual report in writing to the quarterly conference which shall embrace: (1) Number of churches; (2) probable value; (3) other real estate and personal property held; (4) title by which each piece of real estate is held; (5) income therefrom, how expended; (6) receipts from congregation and how expended; (7) amount raised during the year for rebuilding and improving churches; (8) debts, how contracted; (9) the amount of insurance on each property and whether restricted by co-insurance clauses or otherwise; (10) who is custodian of legal papers; (11) detailed list of trusts; funds, where invested; income, how applied.

The Missouri Annual Conference of the Methodist Church in regular session meeting at Brookfield, Missouri, in September, 1941, with the consent of the presiding bishop, all the district superintendents, and the approval of the Maryville District Board of Church Location ordered the work at Walnut Grove discontinued and ordered the defendant trustees to dispose of the assets in their hands as the plaintiff trustees herein should direct. The defendants refused to comply with that order. The plaintiff trustees submitted the question to the Judicial Council for decision and the Judicial Council ruled that the plaintiff trustees were "entitled to recover possession of the property in order that it may apply the same as directed by the Annual Conference." In September, 1942, the plaintiff trustees reported to the regular session of the Annual Conference meeting in Hannibal, Missouri. The opinion of the Judicial Council was read, and the action of 1941 was reaffirmed, declaring the Walnut Grove Church discontinued and sustaining the plaintiff trustees in their order, which directed the defendant trustees to transfer the property in their hands to the plaintiff trustees. Notice of such action was given the defendants; they refused to surrender the money as ordered, and this suit followed.

It is undisputed that the money for the building of the church and for the furniture, fixtures and the organ was provided by the people living in the vicinity of the Walnut Grove Methodist Church; that during all the time after the church was built it was kept in a good state of repairs, and that it was kept insured by the trustees of the local church; all of which was paid for by gifts from members of the church and others living in that vicinity. It is also admitted that the present defendant trustees are successors to the original trustees.

The defendants testified that they have always, since the church burned, contemplated and still contemplate the rebuilding of the church, but that they had not done so at the time of the filing of this suit because of stressed economical conditions existing at the time of the destruction of the church, and later because of restrictions on building material imposed by war conditions.

Plaintiffs contend (1) that the defendants are the regularly constituted successor in office of the original trustees and as such were officers of, elected by, and in accordance with the law and discipline of

the Methodist Church, and as such they have no legal right to defy the authority of the Methodist Church; (2) that the Methodist Church as a denomination has set up a judicial body to finally pass upon and decide questions of discipline and ecclesiastical law arising between various bodies of the church or between various administrative boards and commission of the church, and problems of local churches in their relationship to the conference and administrative boards of the church; that such judicial body heard and determined this question in favor of the plaintiffs and that such decision is binding on the defendants and on the civil courts of this State; (3) there was no evidence by which the trial court could find that the defendants were trustees of an independent religious or charitable trust; nor could the defendants as trustees, nor the local congregation withdraw the property from the jurisdiction of the Methodist Episcopal Church to which it had been subordinated by the grantor by the terms and provisions of the aforementioned deed; (4) that if the plaintiffs are entitled to such trust fund, then the defendants must be charged with interest thereon because they were negligent in not investing such funds.

Defendants state their contention as follows: "The defendant(s) . . . assert they hold the $1200 . . . the proceeds of the said fire insurance policy as Trustees under the provisions of the aforesaid deed for the uses and purposes therein stated. That the powers and duties of the Defendant Trustees are prescribed and proscribed by the trust provisions contained in said deed and do not arise out of any ecclesiastical matter, rule, doctrine, creed, decision or order and for that reason the Defendant(s) . . . refused to turn the insurance money over to Plaintiffs."

It is admitted by all parties hereto, "that the trust under which everybody operates stems from the deed. . . ." The parties disagree on the effect of the terms and conditions of the deed. More briefly stated plaintiffs contend that, while the deed conveys the property to the named board of trustees of the local church, that under the ecclesiastical law and discipline of the Methodist Church, the local board merely holds the property in trust for the benefit of the whole church or the general church, and, therefore, such property is subject to the control and disposition of the general conference and judicial body of the Methodist Church. Defendants contend that the deed "creates a charitable trust, . . . that it isn't exclusively for one denomination; that there is a preference given to the Methodist Episcopal Church but when not in use by them, it is subject to use by any other Evangelical denomination. . . . That the powers and duties of defendant trustees are prescribed and proscribed by the trust provisions in the deed and do not arise out of any ecclesiastical matter, rule, doctrine, creed, decision or order. . . ."

It seems to be conceded by all parties that defendant trustees hold the proceeds of the insurance as they did the property before the fire,

so we approach the question for solution without further discussion of that matter.

Plaintiffs contend that the property rights in question depend upon an interpretation of matters of ecclesiastical law or discipline and church government; that the ecclesiastical body of the Methodist Church having rendered a decision determining property rights, the civil courts will accept that decision as having the same force and effect as a matter adjudicated by any other jurisdiction. We think plaintiffs misconstrue the Missouri decisions on this question. The generally accepted doctrine in this country is clearly stated in Olear v. Haniak, 131 S. W. (2d) 375, l. c. 380-381, wherein it is said:

"An ecclesiastical matter is one that concerns doctrine, creed, or form of worship of the church, or the adoption and enforcement within a religious association of needful laws and regulations for the government of the membership, and the power of excluding from such associations those deemed unworthy of membership by the legally constituted authorities of the church; and all of such matters are within the province of the church tribunals and their decisions will be respected by the civil courts. [54 C. J. 88.]

"It is generally held that, where a civil right or the right of property depends upon some ecclesiastical matter, such as doctrine, discipline, or church government, the civil court, where the question may arise, will take the ecclesiastical decisions, out of which the civil right has arisen, as it finds them, accepting those decisions as matters adjudicated by another jurisdiction, and until an ecclesiastical tribunal having final jurisdiction to decide the question has determined it, the civil court will not assume to do so. [54 C. J. 90.]"

The question presented here is not one of creed, doctrine, discipline or church government, but, on the contrary, calls for the construction of a written instrument (a deed) which involved only the title of property. We need not and do not discuss the power and authority of the Methodist General Conference or its supreme judiciary body over its various individual churches, organizations and officers concerning any matter of faith, creed, church government, or any other Ecclesiastical question.

Plaintiffs rely heavily on the exhaustive opinion of the Supreme Court in Hayes v. Manning, 263 Mo. 1. After reviewing a multitude of authorities, the court announced the general rule as follows (l. c. 42):

"The great weight of authority supports the rule announced in the foregoing cases that the decisions of the highest court of a church as to *purely ecclesiastical* questions within the jurisdiction of such courts to decide, will be accepted as conclusive by the civil courts in the determination of property rights." (Italics ours.)

We accept that general pronouncement as the law of this State, but do not consider it controlling in the instant case because the

questions there under consideration were *purely ecclesiastical,* but not so, in this case.

We hold that the orders and decisions of the General Conference and Judicial Council are not conclusive on the civil courts in determining title to the property here involved.

We come now to a discussion of the question of whether this deed conveyed the property in trust for the use and benefit of the general Methodist Church or whether it conveyed the property in trust as a specific charitable trust. The material part of the deed is copied and we need not recopy it here. The grantor, and we could well say, the donor, Wickard, conveyed the legal title to certain named trustees of the *Methodist Episcopal Church of Andrew County, Missouri,* in trust for the use of the ministry and membership of the Methodist Episcopal Church in the United States of America; *and when the aforesaid church is not in use by the M. E. Church it shall be free for the use of any other Evangelical denomination.* Plaintiffs make two contentions with reference to the clause authorizing other Evangelical denominations to use the property. They say that Wickard, the grantor, "had nothing to say about the contents of the deed." They point to an entry in the minutes of the Board of Trustees which recites that a committee was appointed to draft a new form of deed and, as they say, "ordered Wickard to give a new deed conforming to their requirements." We think it can safely be assumed that if the terms and conditions of the deed had not met with the full approval of Wickard, the donor and grantor, he would not have executed it. There is no merit in this contention.

Their second contention concerning the above clause is that it merely gave other denominations *permissive* use of the property. This argument is not without difficulties. But we think the opinion of the Supreme Court in Mott v. Morris, 249 Mo. 137, throws considerable light on the proper construction of such language. The court was there discussing the question of whether the Board of Trustees of the Methodist Episcopal Church and the Board of Trustees of the Protestant Methodist Church (each owning a one-half interest in the property), could sell the premises for other than church purposes. That deed contained the following provision (141):

"This conveyance is made to said trustees, and said lot is conveyed to them for a site or lot upon which to erect a union church, to be owned and held by said trustees and their successors for the two churches above named; neither church nor its trustees are to convey away its half interest for other than church purposes.

"It is further understood and agreed that the church building to be erected on said lot when completed is to be used as a house for worship by the denominations above mentioned *and when not occupied by either of said denominations, said church building may be used*

506

*by any other orthodox or Christian church for* public worship.''
(Italics ours.)

The court held that the trustees had no authority to convey the property for other than church purposes. With reference to the italicized clause, the court said, l. c. 149-150: ''. . . as said heretofore, the law favors and nourishes charity. The beneficiaries of it may be somewhat uncertain, the grant a little indefinite, but the law benignly aids the charitable use by recognizing that in a public charity uncertainty as to the individual whom the benefit may reach is one of its essential features. . . . In this view of it, if we adopt appellants' contention, what becomes of that feature of the charity, nominated in the Cooper deeds, to-wit, the use of the church by other orthodox or Christian churches when it is 'not occupied by either of said denominations?' In construing the deeds that particular use is to be neither ignored, destroyed or curtailed. The right of alienation claimed is totally blind to it, and for that reason, also, must be judicially repudiated.''

It is also held that ''a charity given for a particular purpose cannot be altered or diverted to any other. It must be accepted and retained upon the same terms upon which it was given, and no concurrence among the donees can operate to transfer or apply it to other purpose.'' [McRoberts v. Moudy, 19 Mo. App. 26-32.]

From what has been said, we conclude that the issue presented is not an ecclesiastical matter and, therefore, the orders and decisions of the various governmental bodies of the Methodist Church are not binding on the civil courts; that the grantor, by his deed, created a specific charitable trust, and that the property and the funds must be used for that purpose. We do not discuss or decide the question of reversion because that issue is not presented, and those entitled to assert it are not parties to this proceeding.

Neither are we deciding the question of the power and authority of the General Conference and the Judicial Council of the Methodist Church over the disposition of property belonging to the church unhampered by any restrictions, reservations or limitations imposed by the donor.

It follows that the judgment should be affirmed. It is so ordered. All concur.