260 P.2d 697

## LATIN AMERICAN COUNCIL OF CHRISTIAN CHURCHES v. LEAL et al.

No. 5561.

Supreme Court of New Mexico.

Aug. 13, 1953.

Edwin Mechem, J. D. Weir and L. J. Maveety, Las Cruces, for appellants.

W. A. Sutherland, W. C. Whatley, W. B. Darden and LaFel E. Oman, Las Cruces, for appellee.

McGHEE, Justice.

This case arises out of internal dissension between certain members of a local church congregation and the parent or general church with which the local church is affiliated. The plaintiff, being the general church, brought action in ejectment in which the issue was whether the plaintiff had the right to possession of the local church property, or whether a faction of the local congregation could renounce their affiliation with plaintiff and assume possession of the property on the ground it belonged to the local congregation. From a judgment in favor of the plaintiff the defendants appeal, contending at the outset it was error for the lower court to refuse to dismiss the action on the ground necessary parties named in plaintiff's complaint were never served with process and did not appear as defendants at the trial, and further urging it was error in stated particulars for the lower court to rule the plaintiff is the legal or beneficial owner of the property in dispute.

There is little controversy over the material facts involved. In 1935 a small number of persons in Las Cruces, New Mexico, banded together for purposes of religious worship in the protestant faith. They met originally at the home of one of their number and soon entered upon negotiations to purchase the property. In 1936 they learned of the plaintiff through a revival meeting being held in El Paso, Texas, and through the defendant, Ramon Lucero, a member of the local group, solicited and obtained affiliation with the plaintiff, which was and is a religious corporation incorporated in the State of Texas since the year 1923, and authorized to do business in the State of New Mexico since 1943.

The Constitution of the plaintiff does not appear in the record, but from all of the

testimony it is clear its general structure follows that of the ecclesiastic pattern, as distinguished from the independent or congregational type of organization. It is provided the parent church shall hold the property of all of the member churches, that the local ministers shall be appointed by the governing officers of the general church, and through conventions composed of delegates of the member churches, its Board of Trustees governs the member churches.

Apparently there was some misunderstanding between the Las Cruces congregation and the plaintiff following affiliation with respect to the acquisition of property by the local church. At that time the President of the plaintiff ordered the removal of the pastor at the Las Cruces church in order that the local group could proceed as they desired in the matter, and the District Superintendent of the plaintiff came to Las Cruces and explained the requirements of the plaintiff respecting property acquired by the member churches. The congregation then voted unanimously to remain a member of the plaintiff and agreed the property acquired or to be acquired by them should be held in the name of the plaintiff.

Thereafter conveyance of five separate parcels of land was made by a member of the local group to the church. The first of these conveyances was to the original meeting place. Subsequently another portion of land was purchased upon which the congregation erected a larger meeting house and the original building became used as a parsonage. The remaining three parcels consist of adjoining lands which at the time of this trial were unimproved. The grantee of the first parcel is "Concilio Latino Americano de Iglesias Cristianes"; two of the conveyances are to the "Latin American Council of Christian Churches of Las Cruces, New Mexico"; one is to designated trustees of "Concilio Latino Americano"; and the last is to designated trustees of "Latin American Council of Christian Churches." All of the trustees so designated were members of the local church.

In 1944 the defendant, Ramon Lucero, who was named as trustee in both the conveyances of realty executed in that form, and who at all times occupied some position of responsibility in the local church, either as elder or treasurer, was delegate to the convention of the plaintiff, and to such convention he took all of the deeds in question. He there presented them to the plaintiff, but objection was raised that the deeds to trustees should have been executed directly to the plaintiff, and he returned to Las Cruces with the deeds where under authority of the local board he prepared correction deeds. The correction deeds, however, were never fully executed due to the inability of all of the trustees to get

together to sign, and at the time of trial both the original deeds and the correction deeds were in the possession of the defendant Lucero.

Relations between the local church and the plaintiff were harmonious until 1948, when the defendant, Alejandro Leal, then District Supervisor of plaintiff, was conducting a revival meeting in Las Cruces. He and the plaintiff fell into some disagreement, as a result of which he resigned his post. The plaintiff then appointed his successor, but the pastor of the local congregation refused to recognize the new supervisor and instead recognized Leal. The schism thus resulted, with some of the local group refusing to submit to the discipline of the plaintiff council and asserting the plaintiff had no right to possession of the church property.

On the disputed issues the lower court found that in all of the deeds the plaintiff was the grantee, except where the conveyance was to named trustees, and there the plaintiff was beneficiary; that delivery of each and all of the said deeds was duly made; and that the defendants, on or about April 20, 1948, entered upon the property and ousted the plaintiff, its agents and representatives therefrom and had retained such possession since then to the exclusion of the plaintiff.

The lower court concluded the plaintiff was the legal and beneficial owner of three of the parcels so conveyed and the beneficial owner of the lands conveyed to named trustees; that any claim the defendants might assert against the property would be with prior full knowledge of plaintiff's title thereto; that defendants are estopped from asserting title or claim to possession thereof, either as members of the original local group or by virtue of their voluntary contribution of funds or labor for the church.

The defendants first contend the lower court erred in refusing to dismiss plaintiff's complaint because necessary parties defendant named in such complaint were never served with process and did not appear as defendants at the trial. The persons in question are three of those designated as trustees in the conveyances of two of the parcels of realty in question, the remaining trustees being defendants herein. It is apparently the position of the defendants that the plaintiff could not proceed against some of the trustees but not all. In support of their argument we are cited to cases and authorities dealing with instances where the trustees were sued as such. Here the action is not for determination of proper disposition of the trust res, for example, or for any other matter internal to an active trust, but the defendants are sued in their individual capacity in ejectment for wrongful ouster of the plaintiff. Nowhere is it shown such omitted trustees were in possession of the prem-

ises or that they claimed interest therein adverse to the plaintiff.

In 28 C.J.S., Ejectment, § 52, p. 901, it is said:

"Generally, the person in actual occupation or possession is a necessary and proper defendant, and no other person is a necessary or proper party defendant.

\*    \*    \*    \*    \*    \*

"Under codes and practice acts any person having an interest adverse to plaintiff, or claiming title or right of possession, may be made a defendant \* \* \* but such a person may, or may not, be a necessary party, the rule being subject to the principle stated supra \* \* \* that only persons in actual occupation are necessary parties. The only effect of not joining as defendants persons other than those in occupation or possession of the premises is to leave the questions raised in the action open to controversy as to any others who may subsequently assert title or adverse rights. \* \* \*"

Cited in support of the text are Bradt v. Church, 1888, 110 N.Y. 537, 18 N.E. 357, 358, and Beyers v. Grande, 1908, 58 Misc. 398, 109 N.Y.S. 447. In the first of these cases is made the statement:

"\* \* \* I am not aware of any rule of law which requires that, in an action to recover the possession of lands, the plaintiff is compelled to join as parties defendant those not in occupation thereof. \* \* \* The Code of Civil Procedure provides (section 1502) that, in actions to recover the possession of real property, the occupant must be made defendant. Section 1503 provides that other parties having or claiming rights may be joined as defendants. The only effect, therefore, of not joining as defendants other parties than those in occupation or possession of the premises, is simply to leave the questions raised in the action open to controversy, as to any others who may subsequently assert title or adverse rights. \* \* \*"

Section 25–804, N.M.S.A. 1941 Compilation, provides:

"The action [ejectment] shall be prosecuted in the real names of the parties, and shall be brought against the tenant in possession, or against the person under whom such tenant holds or claims possession. Any person claiming such premises may, on motion, be made a defendant."

Defendants' contention the omitted trustees were necessary and indispensable parties is without merit.

The remaining assignments of error attack the ruling of the lower court that the plaintiff is the legal and beneficial owner of three and beneficial owner of two of the

five parcels of real estate involved herein. Defendants argue that any title claimed by the plaintiff, legal or beneficial, is completely refuted by the following facts: The trial court found the local group had acquired the lands in dispute and that after affiliation with the plaintiff the local group was known as the Latin American Council of Christian Churches of Las Cruces, New Mexico, or the Concilio Latino Americano; it is uncontradicted the local group negotiated for and furnished the entire consideration for the conveyance of all parcels in dispute; and the local congregation was at all times in full possession and exercising ownership over the properties.

While so far as can be discovered the issue raised is one of first impression before this Court, it is one which has been before the courts of other states and our federal courts on many occasions.

In the famous and historic case of Watson v. Jones, 1871, 13 Wall. 679, 80 U.S. 679, 20 L.Ed. 666, the governing considerations respecting the right to possession by one faction or another of a local church congregation were established. For this purpose a distinction was drawn between the acquisition of property in three different instances:

"1. The first of these is when the property which is the subject of controversy has been, by the deed or will of the donor, or other instrument by which the property is held, by the express terms of the instrument devoted to the teaching, support, or spread of some specific form of religious doctrine or belief.

"2. The second is when the property is held by a religious congregation which, by the nature of its organization, is strictly independent of other ecclesiastical associations, and so far as church government is concerned, owes no fealty or obligation to any higher authority.

"3. The third is where the religious congregation or ecclesiastical body holding the property is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete, in some supreme judicatory over the whole membership of that general organization."

In analyzing the effect of acquisition of property under this classification, the Court declared that in the first of them it is the duty of the courts to prevent a diversion of the property from the trust attaching to its use, and regardless of whether the trust is confided to a congregation of the independent or congregational form of church government, or the associated or ecclesiastical form of church government, the protection the law accords to the trust is the same.

In the second class of cases the property is controlled either by the majority of the congregation or by the local organism it has established for the purpose of ecclesiastical government.

In speaking of the third class of cases, the one most frequently found in the courts and raising the more difficult questions, the Court said:

"The case before us is one of this class, growing out of a schism which has divided the congregation and its officers, and the presbytery and synod, and which appeals to the courts to determine the right to the use of the property so acquired. Here is no case of property devoted forever by the instrument which conveyed it, or by any specific declaration of its owner, to the support of any special religious dogmas, or any peculiar form of worship, but of property purchased for the use of a religious congregation, and so long as any existing religious congregation can be ascertained to be that congregation, or its regular and legitimate successor, it is entitled to the use of the property. In the case of an independent congregation we have pointed out how this identity, or succession, is to be ascertained, but in cases of this character we are bound to look at the fact that the local congregation is itself but a member of a much larger and more important religious organization, and is under its government and control, and is bound by its orders and judgments. * * *

"In this country the full and free right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe personal rights, is conceded to all. The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect. The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. * * *

"* * * the appellants in the case presented to us have separated themselves wholly from the church organization to which they belonged when this controversy commenced. They now deny its authority, denounce its action, and refuse to abide by its judgments. They have first erected themselves into a new organization, and

have since joined themselves to another totally different, if not hostile, to the one to which they belonged when the difficulty first began. Under any of the decisions which we have examined, the appellants, in their present position, have no right to the property, or to the use of it, which is the subject of this suit."

██ Upon the foundation of Watson v. Jones, supra, the authorities are virtually unanimous that where property is acquired by a local church group regularly affiliated with a parent church of the ecclesiastical type under an agreement it shall be governed in its temporal affairs by the direction of the parent church, and that its property shall thenceforth be held under the constitution and discipline of the parent church, the local congregation, or a faction thereof, may, by right, withdraw from such affiliation, but unless such withdrawal is accomplished with the consent of the parent church and in cooperation with its ecclesiastical machinery, they may not take with them the property of the church.

This rule is, of course, subject to the rules governing a conveyance under a specific trust for the furtherance of some particular religious doctrine or form of worship. Marr v. Galbraith, 1944, 238 Mo.App. 497, 184 S.W.2d 190.

One of the leading cases upon this subject is Barkley v. Hayes, D.C., 1913, 208 F. 319, affirmed: Duvall v. Synod of Kansas of Presbyterian Church, 8 Cir., 1915, 222 F. 669; 1918, 247 U.S. 1, 38 S.Ct. 422, 62 L.Ed. 939, where the trial court stated [208 F. 323]:

" * * * The deeds to the various properties in the Church Case convey substantially in this form: 'To ———— trustees of the ———— Cumberland Presbyterian Church of ———— and their successors.' It is broadly argued by defendants that the conveyance of property to particular trustees or officers of a particular congregation of that church in its denominational name would be presumed and held to have created a specific trust for the benefit of that congregation, and for the support therein of the distinctive doctrines of that church. If by this is meant that this form of words creates a specific trust for the teaching of special religious dogmas, or a peculiar form of worship which shall be forever insusceptible of change or of being conducted by any legitimate successor in any other name, I am unable to agree with counsel for defendants. The grant is general in its nature, and, so long as any existing religious congregation can be ascertained to be that congregation or its regular or legitimate successor, it is entitled to the use of the property. Such is undoubtedly

the overwhelming weight of decision, both federal and state."

In speaking of the ecclesiastical structure of the parent church in that case, the Presbyterian Church, the court said:

"* * * In this church the religious congregation or ecclesiastical body holding the property is but a subordinate member of the general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control, more or less complete, in some supreme judicatory over the whole membership of that general organization. The local congregation is itself but a member of a much larger and more important religious organization, is under its government and control, and is bound by its orders and judgments. Therefore, when the property held by the church is that purchased or conveyed for the general use of the religious congregation, not devoted forever by the instrument which conveyed it nor by any specific declaration of its owner to the support of any special religious dogmas, or any peculiar form of worship, it is and remains the property of the general church which exercises such general and ultimate power of control. It does not belong to the particular congregation which uses it, much less to the individual members of such a congregation. It does not belong to the

presbytery or the synod, nor, in a strict sense, to the general assembly. It belongs to the church which is composed of its entire membership; that membership being governed and controlled by the organic law of the church, the administration of which is lodged in certain judicatories rising, in regular succession, to the general assembly or court of last resort, embracing in itself legislative, administrative, and judicial powers. The government of the Presbyterian Church is republican and representative in character. Its administration is vested, not in the individual members, not in the congregations, but in the general assembly and the presbyteries; and the church as a whole, acting through its supreme governing bodies, exercises the ultimate rights of ownership and control over all its properties."

While the Barkley case dealt with the effect of a merger of two large branches of the Presbyterian Church, and while the ecclesiastial machinery of the Presbyterian Church seems to be greatly more elaborate than that employed by the plaintiff in this case, the similarity of the underlying problems there and here is immediately apparent.

The principles set forth in Watson v. Jones and Barkley v. Hayes, supra, have been reiterated time and again by the

courts. Among the more recent decisions are the following: Britton v. Jackson, 1926, 31 Ariz. 97, 250. P. 763; Board of Trustees, etc. v. Mount Carmel C. C. Ass'n, 1940, 152 Kan. 243, 103 P.2d 877; Clay v. Crawford, 1944, 298 Ky. 654, 183 S.W.2d 797; Kelly v. McIntire, 1938, 123 N.J.Eq. 351, 197 A. 736; Presbytery of Bismarck v. Allen, 1946, 74 N.D. 400, 22 N.W.2d 625; Church of God, etc., v. Church of God, etc., 1947, 355 Pa. 478, 50 A.2d 357; Turbeville v. Morris, 1943, 203 S.C. 287, 26 S.E.2d 821; Presbytery of Huron v. Gordon, 1941, 68 S.D. 228, 300 N.W. 33.

Nothing appears in the instant case to except it from the operation of the general rule established in Watson v. Jones, supra, and the other authorities cited herein, and the ruling of the lower court is correct regarding the legal and beneficial ownership and right to possession of the property.

■ The defendants lastly contend there has been no effective delivery of the deeds to the real estate involved by the grantor to the plaintiff, because all of the deeds have been in the possession of the defendant Lucero, who was instrumental in arranging for the purchase of the properties, and who is named as trustee in two of the deeds. The point is without merit. The lower court has found the plaintiff is named as grantee or beneficiary in all of the deeds, which finding is not specifically attacked by defendants. All of these deeds were duly recorded, presumably by the defendant Lucero. At the time the deeds were given to him he was a loyal member of the local church as affiliated with the plaintiff, and it is as such that he took and held the deeds, with full knowledge of the requirement of the plaintiff that all property be vested in it and that such requirement was unequivocally accepted by the local congregation.

The judgment of the lower court is affirmed.

It is so ordered.

COMPTON and SEYMOUR, JJ., concur.

SADLER, C. J., and LUJAN, J., not participating.