THIRD NATIONAL BANK IN NASH-
VILLE, Plaintiff-Appellant,

v.

Barbara M. FRIEND,
Defendant-Appellee.

Court of Appeals of Tennessee,
Middle Section.

Aug. 7, 1981.

Permission to Appeal Denied by Supreme
Court Jan. 4, 1982.

Farris, Warfield & Kanaday by Thomas
Kanaday, Jr., and Daniel Small, Nashville,
for plaintiff-appellant.

Gullett, Sanford & Robinson by W. Ha-
rold Bigham, Nashville, for defendant-ap-
pellee.

## ABRIDGED OPINION

TODD, Presiding Judge, Middle Section.

(The original opinion has been abridged
with the concurrences of
participating judges.)

The plaintiff, Third National Bank in
Nashville, has appealed from the dismissal
of its suit against the defendant-appellee,
Barbara M. Friend, seeking recovery from
her of the amount due upon a note of her
husband, Fred E. Friend, secured by a con-
tinuing guaranty agreement signed by Bar-
bara M. Friend.

The complaint states that Fred E. Friend
(husband of Barbara) is indebted to plain-
tiff upon his note of $60,000 dated Decem-
ber 13, 1977, and due February 13, 1978,
and upon his demand note of $100,000 dated
September 10, 1976, payable to Douglas
Claude Martinson and Jack Lamb and by

them endorsed to plaintiff. The complaint also states that appellee, Barbara Friend, is liable to plaintiff for the amount due upon both notes because of a guaranty agreement signed by her on August 2, 1971.

The answer of appellee admits that she signed the guaranty, but states that the guaranty was signed solely for the purpose of inducing plaintiff to loan her and her husband $54,500, which has been fully repaid. The answer denies that the guaranty is applicable to either of the notes involved in the present case.

The memorandum of the Chancellor contains the following:

In late June, 1971, Fred Friend telephoned his wife, who was in Europe, that he had purchased a home located at 4636 Chalmers Drive. By arrangement with Third National Bank, Mr. Friend received interim financing in the amount of $54,-500.00 for the purchase of the house. The financing was given on the condition that the Friends' Chattanooga home would be sold within one year.

. . . .

Upon her return from Europe, Mrs. Friend accompanied her husband to the bank to execute the loan papers. Mr. Winston Moore, a close personal friend and bank officer in charge of the loan, was the only other person present at the signing. Neither the Friends nor Mr. Moore could recall with absolute clarity the conversation of that day. However, all witnesses stated during testimony that the conversation was general in tone, filled with pleasantries.

The papers were presented to Mrs. Friend for her signature. She signed the four documents at Mr. Friend's direction. She did not inquire about the nature of the documents. Moreover, she did not read them before signing. The documents which Mrs. Friend signed were a promissory note in the amount of $54,-500.00, a general collateral agreement, a deed of trust, and the guaranty in issue here.

The only information which Mrs. Friend had on August 2, 1971 was that she was signing papers necessary to obtain the loan for interim financing for the purchase of the Chalmers Drive property. At no time did Mr. Moore make any representations to the defendant concerning the documents. He did not explain the content of the papers. In addition, there were no conversations between Mrs. Friend and Mr. John Miles about the loan transaction. Mr. Miles handled the Friends' account with Third National Bank after Mr. Moore's departure.

Prior to August 2, 1971, Third National Bank had made several business and personal loans to Fred Friend. On the day the guaranty was signed, Mr. Friend had some minor outstanding obligations with the bank. The $54,500.00 loan for the Chalmers Drive property was repaid a little more than a year from the execution of the loan papers. When the loan was repaid, Third National Bank surrendered the promissory note, deed of trust, and the general collateral agreement. The guaranty was not among the papers returned to Mr. Friend.

Between 1972 and 1979, Fred Friend executed two substantial loans from the plaintiff. These loans represent the $211,328.92 judgment rendered against the defendant and others.

Mrs. Friend did not learn of the default on these loans until March 3, 1979, when she received a demand letter from the bank's attorneys for the amount. . . .

. . . .

The question presented is whether the circumstances surrounding the execution of the guaranty negate its enforcement as to Mrs. Friend.

. . . .

It is the opinion of this Court that the circumstances surrounding the execution of the guaranty are dispositive of the case in favor of the defendant.

The record indicates that on August 2, 1971, Mrs. Friend traveled to Nashville, pursuant to the instructions of her husband, for the express purpose of executing the loan papers. Thus, it is clear that she would not have come to Nash-

ville at that time but for the necessity of signing the documents. It follows that Mrs. Friend believed that any and all documents were signed in connection with the Chalmers Drive property.

. . . .

Clearly, the inducement for signing the guaranty related to the $54,500.00 loan. It results, therefore, that it was not her intention to sign a document binding upon her in perpetuity. The execution of the guaranty was not in the contemplation of the parties on August 2, 1971. She merely signed the papers presented to her for obtaining a loan of $54,500.00.

An examination of the other documents signed by the defendant reinforce the argument that the papers related to a single transaction. The deed of trust, promissory note, and general collateral agreement identify specifically the nature of the loan. As previously stated, these documents were returned when the loan was repaid. It is difficult to understand why the guaranty was not also returned to Mr. Friend since the general collateral agreement contained language similar to the terms set forth in the guaranty.

Finally, the Court observed the demeanor of Mrs. Friend and determined her credibility and is of the opinion that she intended to sign papers relating only to the single loan.

Accordingly, the Court concludes that the continuing guaranty executed on August 2, 1971 is unenforceable against the defendant, Barbara M. Friend. Therefore, the complaint is dismissed.

■ This Court concurs in the facts as found by the Chancellor. However, this Court cannot concur in his legal conclusions from those facts.

This Court respectfully disagrees with the conclusion that: "The execution of the guaranty was not in the contemplation of the *parties* on August 2, 1971."

The finding that *Mrs. Friend* did not actually intend to bind herself on any future obligation does not support a conclusion that such was not within the (legal) contem-

plation of the parties. The reason for this is twofold, viz. (a) all of the evidence indicates that the bank intended that the guaranty be executed for the purposes stated therein, and (b) the contemplation (intent) of the parties is to be determined from their speech and acts and not some secret, uncommunicated state of mind. The *act* of Mrs. Friend in signing the guaranty is conclusive of her intent, i.e., what was in her contemplation, unless she should show a *mutual* understanding on the part of both herself *and* the bank as to the effect of the instrument, or that she was fraudulently misled into signing the guaranty without reading it. See authorities annotated in 6 Tenn.Dig., *Contracts* § 93(2).

In *Nashville Electric Supply Company, Inc. v. Kay Industries, Inc., et al.*, Tenn. App.1975, 533 S.W.2d 306, this Court upheld the liability of a guarantor against a defense that the guarantor placed a limitation on obligations secured and said:

■ In the interpretation of contracts, it is the intention of the *parties*, that is *both parties*, which must be ascertained; and, in this respect, if the language of a written instrument is clear and unambiguous, the court must interpret it as written, rather than according to the unexpressed intention of one of the parties. *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (1934).

533 S.W.2d at 310.

This Court also respectfully disagrees with the conclusion of the Chancellor that an examination of all the papers signed contemporaneously with the guaranty shows the intent of the parties to limit the effect of the guaranty to the loan being consummated at the time. A contrary inference arises from the fact that Mrs. Friend signed the note evidencing the loan. It was entirely unnecessary and superfluous for her to sign a guaranty to secure her obligation on a note already signed by her. Thus, without a reason to sign the guaranty to evidence her liability on her own debt, the compelling inference must be that the guaranty was executed for another purpose, i.e., to secure other obligations. Such was

the overt and conscious intent of the bank which obviously desired to obtain the guaranty as a "fringe benefit" or "additional inducement" in order to have security on future obligations of Mr. Friend. Mrs. Friend had no intent at all for, as she contends, she did not know at the time what she was signing. Her intent must be deduced from the unread contents of the paper she signed, and that intent was the same as that of the bank.

Contrary to the conclusion of the Chancellor in this regard, this Court considers that the retention of the guaranty by the bank when all other loan papers were surrendered is evidence of the intent of the bank to invoke the guaranty later. The failure of Mrs. Friend to call for surrender of the guaranty at that time contradicts her insistence that it was intended to cover only the home loan which was subsequently satisfied.

Counsel for Mrs. Friend argues eloquently that the "inducement" for Mrs. Friend's signature on the guaranty was her belief that it applied only to the home loan then being closed. However, an "inducement" is not controlling as to the terms of a contract. A contracting party is frequently "induced" to assume other liabilities unrelated to the immediate contract, and the assumption of such other liabilities is part of the "inducement" to the other party to enter into the contract.

In the present case, it must be assumed that the bank requested and obtained the guaranty as an additional inducement to the lending of the money to Mr. and Mrs. Friend for their new home.

This Court is, of course, sympathetic with Mrs. Friend in her present plight. It is understandable that she would assume that the papers she signed related only to the present transaction. However, she cannot be relieved of her written obligation because of her unfortunate and erroneous assumption.

This Court is not entirely comfortable with the present state of the law as to continuing guaranties. However, it is part of the law of contracts which allows great freedom and lattitude in the contracts which may be made by the parties, but places upon the parties a heavy burden to minutely examine and understand what they sign.

The policy of banks to use the "leverage" of approving a present loan to exact continuing guaranties may be subject to criticism, but it is not unlawful.

Any relief from the rigors of liabilities unwittingly assumed by signing a continuing guaranty must come through legislation and not through after-the-fact impairment of contracts by the courts.

■ A continuing guaranty is one which is not limited to a particular transaction or specific transactions, but which is intended to cover future transactions until revoked. *Farmers-Peoples Bank v. Clemmer*, Tenn. 1975, 519 S.W.2d 801; *Mountain City Mill Co. v. Lindsey*, 8 Tenn.App. 337 (1928).

Such was the guaranty in the present case.

■ Absent contractual undertaking to do so, there is no obligation to give notice to the guarantor that new obligations are being incurred for which the guarantor will be liable. *Hassell-Hughes Lumber Co. v. Jackson*, 33 Tenn.App. 477, 232 S.W.2d 235 (1950).

The decree of the Chancellor is reversed. Judgment is rendered in this Court in identical terms with that rendered by the Chancellor against the defendant, Fred E. Friend, that is, a judgment in favor of plaintiff and against Barbara M. Friend for $211,328.92 plus lawful interest thereon from May 17, 1979.

The cause is remanded for the entry of said judgment upon the records of the Chancery Court, for the enforcement of said judgment, and for such other proceedings as may be necessary and proper.

Reversed, rendered and remanded.

CONNER, J., and THOMAS A. SHRIVER, Special Judge, concur.