**VOLUNTEER STATE BANK,**
**Plaintiff–Appellant,**

v.

**DREAMER PRODUCTIONS, INC., and**
**K.C. Spurlock, Individually,**
**Defendants,**

**and**

**C.K. Spurlock, Individually,**
**Defendant–Appellee.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

March 11, 1987.

Affirmed by Supreme Court
March 14, 1988.

Charles H. Warfield, Daniel W. Small, Joel E. Jordan, Nashville, Carl Oldham, Hendersonville, for plaintiff-appellant.

Timothy L. Takacs, Smith & Takacs, Hendersonville, for defendant-appellee.

## OPINION

LEWIS, Judge.

In this action, the plaintiff seeks a recovery for a defaulted note from the promissor and the guarantors of the note. The trial court entered judgment against the promissor and one of the guarantors but dismissed the complaint as to the other guarantor. The plaintiff appealed. For the reasons stated herein, we reverse and remand.

Volunteer State Bank (Bank) filed its complaint against Dreamer Productions, Inc., (Dreamer), C.K. Spurlock (Spurlock, Jr.), and K.C. Spurlock (Spurlock III).[1] The complaint alleged that Dreamer had defaulted on a $200,000 note owed to the Bank, that Spurlock, Jr., and Spurlock III had executed guaranties, guaranteeing payment of the note, and that, although demand had been made upon each of the defendants, they had failed and refused to pay the note.

Following an evidentiary hearing, the trial court entered judgment against Dreamer and Spurlock III for $199,000.00 "plus interest accrued on said note at the note rate and attorney's fees in the amount of $25,-000.00" and dismissed the complaint as to Spurlock, Jr. Neither Dreamer nor Spurlock III has appealed.

The Bank has appealed from the dismissal of its complaint against Spurlock, Jr., and presents one issue: "Did the Chancellor err in failing to enforce the plain and unambiguous terms of a guaranty?"

The Bank made two loans to Dreamer. The first for $200,000, and the subject of this suit, was made some two months prior to the time Spurlock, Jr., executed a personal guaranty. Spurlock III executed a guaranty, guaranteeing the $200,000 simultaneously with the making of the $200,000 note.

---

1. While he was sued as K.C. Spurlock, the proof shows that he is actually C.K. Spurlock III, son of C.K. Spurlock, Jr.

Subsequently, Dreamer, through Spurlock III, made a request to the Bank for an additional $100,000 loan. Spurlock III testified that he called the Bank to talk to a Mr. Cox about the $100,000 loan but that Mr. Cox was out of town. However, Jerry Daniel, a Bank officer, told him he could handle the matter for him. There is evidence that the Bank informed Spurlock III that the $100,000 loan would be made if Spurlock, Jr., agreed to guarantee the indebtedness of Dreamer. Spurlock III testified that there was no discussion about the necessity of Spurlock, Jr.'s guaranteeing all indebtedness but that he was told it would be necessary for Spurlock, Jr., to "co-sign" the $100,000 note.

Jerry Daniel gave Spurlock III a personal guaranty for Spurlock, Jr., to sign. Paper-clipped to the personal guaranty was the $100,000 note.

Spurlock III took both the guaranty and the note to Spurlock, Jr. The $100,000 note shows that it is made by Dreamer and is secured by the guaranty of "C.K. Spurlock."

When Spurlock III brought the guaranty to Spurlock, Jr., Spurlock, Jr., read a few lines and then asked either Spurlock III or Spurlock, Jr.'s secretary to get Jerry Daniel on the phone. Mr. Spurlock testified that when he talked with Jerry Daniel on the phone, he told him, "I thought I was co-signing this note. Jerry told me that this was a standard banking form that I was signing for the note that was attached and this was attached to the top of it with a paper clip, and that's all I was signing. And he would take care of all the paper work when the note got back."

One of Spurlock, Jr.'s defenses at trial was that the Bank, "by its agents or employees, fraudulently induced C.K. Spurlock, Jr., to execute the alleged guaranty" when Jerry Daniel assured him that the guaranty was for the $100,000 note only.[2]

The trial court, in its memorandum, found that there were extremely sharp conflicts in the testimony of the parties con-cerning some of the facts surrounding the execution of the guaranty. The trial court determined that it did not need to resolve the conflicts of the witnesses because

the controlling issue is the failure of the Bank to communicate to [Spurlock, Jr.] its express intention to obtain his signature on the Guaranty for the purpose of obligating him for both the One Hundred Thousand Dollars ($100,000.00) Note which was attached to the Guaranty Form at the time he executed the Guaranty and the Two Hundred Thousand Dollars ($200,000.00) Note executed by the son. . . .

The trial court found that this case was controlled by *Third National Bank v. Friend*, 626 S.W.2d 464 (Tenn.App.1981), and quoted from *Friend* as follows: "A continuing guaranty is one which is not limited to a particular transaction or specific transactions, but which is intended to cover future transactions until revoked." *Id.* at 467.

The trial court determined from that language that the guaranty did not cover an antecedent debt unless the Bank specifically made known to the guarantor that there was an antecedent debt.

The guaranty signed by Spurlock, Jr., provides in part as follows:

[Spurlock, Jr.] hereby guarantee(s) prompt payment when due or at any time thereafter of any and all indebtedness or obligations, including principal, interest, costs of collection, and reasonable attorneys fees, upon which the Guaranteed is now or may hereafter, at any time and from time to time, or for any one or more purposes, become indebted, obligated or bound to BANK.

It further provides that it

is intended to be, an absolute, unconditional and continuing Guaranty which shall not be affected by any act or thing whatsoever except as herein provided. . . .

and

No modification, amendment or waiver of any provision of this Guaranty shall

---

**2.** The $100,000 note was fully repaid within approximately ninety days after it was made and is not involved in this suit.

be effective unless in writing and subscribed by a duly authorized officer of the BANK, and each of the undersigned acknowledges his understanding that the BANK will enforce this Guaranty to its fullest extent, any declaration or statement to the contrary by the Guaranteed, any employee or agent of the BANK, or any other person to the contrary notwithstanding.

Further:

Unless specific limitations are set forth in the space below, the indebtedness and obligations covered hereby shall have the unlimited meaning provided above; but if the space below is used to limit this Guaranty to a specific indebtedness, such guaranteed indebtedness shall be limited to such specified indebtedness, together with all renewals, extensions, refinancings, or other modifications thereof.

The space provided for "Specific limitations of this Guaranty" was left blank.

■ The trial court found that since the Bank had failed to inform Spurlock, Jr., that there was a $200,000 note for which Dreamer was obligated to the Bank, the guaranty did not cover that obligation. We respectfully disagree. The language of the guaranty is plain. The guarantor, by executing the guaranty, agrees to "guarantee prompt payment when due or at anytime thereafter of any and all indebtedness ... upon which Dreamer Productions is *now* or may hereafter ... become indebted, obligated or bound to BANK." (Emphasis added).

Spurlock, Jr., executed the guaranty containing the foregoing language and that language specifically obligated him for any debt Dreamer "now" owed or would in the future owe (so long as the guaranty remained in force).

The trial court's reliance on *Third National Bank v. Friend* is misplaced. Nothing in *Friend* holds that a guaranteed must inform a guarantor of debts in existence at the time of the execution of the guaranty for those debts to be guaranteed. The language of the guaranty is specific.

A guarantor has it in his power to make his obligation dependent upon notice, demand or any other condition he thinks is proper. Here, Spurlock, Jr., could have limited his guaranty to the $100,000 note only. The guaranty contained blank spaces for him to write in any conditions he so desired.

The trial court erred in holding that the plain terms of the guaranty did not include "an antecedent debt" unless the Bank gave Spurlock, Jr., specific notice of that debt.

■ Spurlock, Jr., also argues that he should not be held liable upon his guaranty because there was no consideration.

A contract of guaranty requires consideration to be binding and enforceable. *See King v. John A. Denies Sons Co.*, 56 Tenn. App. 39, 57, 404 S.W.2d 580, 588 (1966). Failure of consideration may be shown in defense of a suit on a written contract. *Samuel v. King*, 158 Tenn. 546, 551, 14 S.W.2d 963, 964 (1929). "Failure of consideration is in fact simply a want of consideration...." *Farrell v. Third National Bank*, 20 Tenn.App. 540, 548, 101 S.W.2d 158, 163 (1936).

Spurlock, Jr., correctly argues that the $200,000 indebtedness "was executed, consummated and the funds drawn ... before" the $100,000 note and his guaranty were executed, he therefore insists that the $200,000 loan was "no part of the inducement for which his personal guaranty was given." He relies on 38 C.J.S. *Guaranty* § 26 at 1163, which states: "[W]here the guaranty contract is made so long subsequent to the execution of the principal contract that it does not form a part of the same transaction, and where the guarantor receives no benefit from the principal contract, the guaranty must be supported by a new and independent consideration."

While lack of consideration might or might not have been a valid defense for Spurlock, Jr., if he had signed the guaranty two months after the $200,000 loan in order to guarantee only the $200,000 loan, that is not the situation here. Here, there is a new and independent consideration, *i.e.*, the loan to Dreamer of $100,000. In consideration for that loan, Spurlock, Jr., executed the guaranty which provided that he guar-

**748**

anteed obligations which Dreamer "now or may hereafter" owe.

There was sufficient consideration.

 The Bank argues that the trial court erred in allowing parol evidence regarding the execution of the guaranty.

Spurlock, Jr., as we have stated, defended at the trial that he was fraudulently induced to execute the guaranty when Jerry Daniel assured him that the guaranty was only for the $100,000 loan. "Parol evidence may be admitted to show fraud...." *Gibson County v. Fourth & First National Bank*, 20 Tenn.App. 168, 178, 96 S.W.2d 184, 190 (1936).

The trial court made no finding on this issue. It was the trial court's opinion that it was not necessary to resolve which of the two witnesses, Jerry Daniel or Spurlock, Jr., was the truthful witness. We disagree. If the trial court believes Jerry Daniel, then the conversation between Spurlock, Jr., and Jerry Daniel never took place and Spurlock, Jr., could not have been induced to execute the guaranty by anything that Mr. Daniel stated. If the trial court resolves the credibility of the witnesses in favor of Spurlock, Jr., then there is a question of whether or not Spurlock, Jr., could reasonably rely on the statement of Mr. Daniel. The general rule in Tennessee is that a party asserting fraud must reasonably rely on a misrepresented material fact. *Edwards v. Travelers Insurance*, 563 F.2d 105, 113 (6th Cir.1977); *Bevins v. Livesay*, 32 Tenn.App. 1, 7–8, 221 S.W.2d 106, 109 (1949).

This case is before this Court *de novo* upon the record, Tenn.R.App.P. 13(d), and this Court may enter judgment in accordance with the preponderance of the evidence as shown by the record. This Court in this instance is unable to do so since, in order to resolve the question of whether or not there was fraud, it is necessary to determine the credibility of witnesses, which this Court cannot do with the record before it.

It therefore results that the judgment of the trial court, based upon the trial court's holding that the guaranty did not cover antecedent debts unless the Bank gave Spurlock, Jr., specific notice of those antecedent debts, is reversed and the cause is remanded to the trial court for further consideration of the case on the issue of whether or not the Bank was guilty of fraud in inducing Spurlock, Jr., to execute the guaranty. The costs of appeal are assessed against Spurlock, Jr.

CANTRELL and KOCH, JJ., concur.