# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 8, 2007

## AILENE TOLIVER v. BOBBY D. WALL, ET AL.

**Appeal from the Chancery Court for Montgomery County**
**No. MC-CH-CV-RE-04-10     Laurence M. McMillan, Jr., Chancellor**

---

**No. M2006-00910-COA-R3-CV - Filed on June 28, 2007**

---

Trial court ordered foreclosure on a deed of trust finding obligor failed to prove failure of consideration for the lien. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Christine Zellar Church, Clarksville, Tennessee, for the appellant, Ailene Toliver.

Steven T. Atkins, Clarksville, Tennessee, for the appellees, Bobby D. Wall, Betty Jo Wall, Steven T. Atkins (in his capacity as Substitute Trustee).

## MEMORANDUM OPINION[1]

The facts in this case are not in dispute. On December 6, 1983, Bobby Wall and his wife conveyed to Mr. and Mrs. Toliver a 3.3 acre tract of land which included a home built by Mr. Wall. The Tolivers paid the Walls $50,000 for the parcel and the home. The legal description in the deed to the Tolivers extended their property line to the Red River. The Tolivers financed 100% of the purchase price through Northern Bank of Tennessee which took a mortgage on the property. In the deed to the Tolivers, the Walls agreed that the purchase price was $50,000 as follows:

---

[1]Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[The Walls] herein make oath that the consideration for this conveyance is the sum of $50,000, receipt whereof is acknowledged, which in their opinion, is equal to the fair market value of said real estate.

Thereafter, two weeks later, on December 30, 1983, the Tolivers executed a second deed of trust to secure a $10,000 note payable to the Walls ("Wall Deed of Trust"). The Wall Deed of Trust was secured by the same property previously conveyed to the Tolivers by the Walls. The Wall Deed of Trust provided that it was to secure "payment of one note executed by [the Tolivers] and payable to [the Walls] in the principal sum of $10,000." The Wall Deed of Trust provided that no interest would accrue in 1984-85, and that in 1986 interest would accrue at the rate of 10% ($1,000). Beginning in 1987, the principal plus accrued interest, totaling $11,000, would continue to accrue interest at 10% and would be repaid in 120 equal monthly installments. The note referenced in the Wall Deed of Trust was not made a part of the record in these proceedings.

According to Mr. Wall, the Tolivers made payments in accordance with the Wall Deed of Trust in 1987 through April of 1991, leaving a balance of $10,815.38 due and owing. The record is silent about the circumstances that existed in 1991 or why the payments stopped. Mr. Toliver died in 1995.[2] The first notice of default under the Wall Deed of Trust provided to Mrs. Toliver was in September of 2002 - more than ten years after Mr. Wall says he received the last payment. A foreclosure sale under the Wall Deed of Trust was scheduled for September 17, 2004.

On September 16, 2004, Mrs. Toliver sued Mr. Wall and the trustee under the Wall Deed of Trust seeking a restraining order prohibiting foreclosure and a declaration that the deed of trust be declared void. While Mrs. Toliver raised several grounds in her complaint, the only ground relevant in this appeal is that the Wall Deed of Trust was unsupported by consideration. Mr. Wall and the trustee counterclaimed asking that the court order foreclosure on the Wall Deed of Trust due to Mrs. Toliver's default.

The matter was tried solely on the issue of whether there was consideration to support the Wall Deed of Trust. On March 31, 2006, the trial court found that Mrs. Toliver failed to carry her burden of proof as relates to her claim of failure of consideration and that Mr. Wall's counter complaint for judicial foreclosure for default under the deed of trust was supported by the evidence. The trial court further found Mrs. Toliver was estopped from claiming lack of consideration due to her acknowledging the indebtedness by listing Mr. Wall as a creditor in her Chapter 13 Plan bankruptcy filing and submitting a plan of reorganization proposing payments to Mr. Wall.

## I. STANDARD OF REVIEW

We review this case *de novo* on the record with a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). No presumption of correctness attaches

---

[2]Mrs. Wall also died sometime in the late 1990s to early 2001.

to the trial court's decisions regarding questions of law. *Wilson v. Wilson*, 984 S.W.2d 898, 900 (Tenn. 1998), *cert. denied, Oakley v. Wilson*, 528 U.S. 822, 120 S.Ct. 68, (1999).

## II. ANALYSIS

It is a basic principal of law that consideration is necessary to the formation of a contract. *Ward v. Sharpe*, 200 S.W. 974, 974 (Tenn. 1917); *Dobbs v. Guenther*, 846 S.W.2d 270, 276 (Tenn. Ct. App. 1992); *Volunteer State Bank v. Dreamer Prods. Inc.*, 749 S.W.2d 744, 747 (Tenn. Ct. App. 1987). Failure of consideration is a good defense to an action on a contract. *City of Shelbyville v. State*, 415 S.W.2d 139, 143 (Tenn. 1967); *Volunteer State*, 749 S.W.2d at 747. Consideration has been described as either a benefit to the promissor or a detriment to or obligation upon the promissee. *Calabro v. Calabro*, 15 S.W.3d 873, 876 (Tenn. Ct. App. 1999). "Consideration consists when the promissor does something that he is under no obligation to do or refrains from doing that which he has a legal right to do." *Calabro*, 15 S.W.3d at 877, *citing Kozy v. Werle*, 902 S.W.2d 404, 411 (Tenn. Ct. App. 1995). The performance of a pre-existing obligation affords no consideration at law for an original undertaking by another person. *Givens v. Mullikin*, 75 S.W.3d 383, 406 (Tenn. 2002); *Dunlap Tire & Rubber Corp. v. Service Merchandise Co.*, 667 S.W.2d 754, 758 (Tenn. Ct. App. 1983).

If a contract is in writing and signed by the party sought to be bound, such is *prima facie* evidence of consideration. Tenn. Code Ann. § 47-50-103; *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991). The burden to overcome this presumption is on the party asserting lack of consideration. *Atkins*, 823 S.W.2d at 552.

The Wall Deed of Trust does not recite any consideration other than "one ($1.00) Dollar, the receipt of which is hereby acknowledged." Mrs. Toliver testified that she and her husband bought their home and farm for $50,000 from the Walls. It is not disputed that the bank loan from the Northern Bank of Tennessee ($50,000) was used to pay the Walls for the property. Mrs. Toliver testified that she had no recollection of the Wall Deed of Trust or why the Wall Deed of Trust was executed. Mrs. Toliver testified that she was not aware of the Wall Deed of Trust until 1999 or 2000 when she filed for bankruptcy.[3] Mrs. Toliver did not deny that her signature was on the Wall Deed of Trust.

As part of her proof on the failure of consideration issue, Mrs. Toliver called Mr. Wall as a witness. Mr. Wall did not try to claim that he had loaned Mr. or Mrs. Toliver $10,000 in cash in consideration for the Wall Deed of Trust. Instead, Mr. Wall claimed that he had given the Tolivers property worth $10,000 in exchange for the note and Wall Deed of Trust. Mr. Wall testified that about the time he finished the home, the Tolivers decided they wanted additional property that went

---

[3]Mrs. Toliver testified that she filed for bankruptcy four times. While she could not testify with accuracy, she recalled filing for bankruptcy in the following years: (1) 1998 or 99, (2) 2000, (3) 2002, and (4) 2003-04. She testified that "none of those have ever gone all the way thorough." Whether and to what extent these bankruptcies affected the running of the statute of limitations, we are unable to say. Furthermore, that issue was not raised on appeal.

down to the river. The Northern Bank of Tennessee had already committed $50,000, so Mr. Wall testified that he decided to loan the Tolivers the money to buy the additional property. Mr. Wall told the trial court that Mr. Toliver was not well at the time, but Mrs. Toliver convinced Mr. Wall that she could make the payments for the additional property. The original price for the additional lot was $10,000. According to Mr. Wall, both of the Tolivers made the payments in cash until April of 1991. Mr. Wall testified that Mrs. Toliver never denied that the debt was owed. Later, on September 11, 2002, Mr. Wall declared a default on the deed of trust.[4] Thereafter, Mr. Wall instituted foreclosure proceedings which were interrupted by bankruptcy proceedings.

Mr. Wall testified that he was sure this second lot that the Tolivers bought for $10,000 was conveyed to them by a separate deed. A comparison, however, of the deed to the Tolivers wherein the Walls conveyed the home and 3.3 acres with the Wall Deed of Trust shows that they contain the same property description. In other words, the Tolivers already owned the property that Mr. Wall says he conveyed to the Tolivers in exchange for the $10,000.

It is difficult to determine the details of any actual deal that may have existed among the parties. Mr. Wall's only explanation is that set out above. We must, however, decide the case based on the record we have before us. Mrs. Toliver denied that any consideration supported the Wall Deed of Trust, and she proved that she and her husband had already bought the property Mr. Wall claimed was the consideration for the Wall Deed of Trust. Mr. Wall made an oath in his deed to the Tolivers to the effect that the consideration for that conveyance was $50,000. There is no mention that the Tolivers owed him another $10,000 for the property that was being conveyed. There is simply no evidence in this record that Mr. Wall provided the Tolivers with any consideration for the Wall Deed of Trust.

While not raised on appeal, we do not believe the Tolivers' partial performance, *i.e.*, payments on the note, has any bearing here. First, there is no question the Tolivers provided consideration; the issue is whether the Walls did. Second, without consideration, the contract is void. *Ward v. Sharpe*, 200 S.W. at 974; *Horne v. Phillips*, No. E1999-00141-COA-R3-CV, 2000 WL 224623, at *3 (Tenn. Ct. App. Feb. 28, 2000) (No Tenn. R. App. P. 11 application filed) (holding contract void from the time it was drafted). A promise that is unsupported by consideration is unenforceable and is characterized as a *nudum pactum*. *Helton v. Reynolds*, 640 S.W.2d 5, 9 (Tenn. Ct. App. 1982), *citing Boyd v. McCarty*, 142 Tenn. 670, 222 S.W. 528 (1919).

Alternatively, the trial court found Mrs. Toliver was judicially estopped from raising lack of consideration since she acknowledged the debt in a chapter 13 Bankruptcy Plan dated September 29, 2003. Mrs. Toliver, however, did not sign this plan. Furthermore, there was no proof that listing Mr. Wall as a creditor was a verification of the debt as opposed to simply a listing of possible creditors.

---

[4]Mr. Wall testified that he paid some insurance premiums on the property to protect his interest. He was not able to find any documented proof of these payments. Mr. Wall did not attempt to raise or argue promissory estoppel.

We find, based on the record we have before us, that Mrs. Wall carried her burden of proof to show that there was no consideration for the Wall Deed of Trust. Consequently, it is void, of no effect, and not enforceable. Therefore, Mr. Wall has no action for foreclosure.

The trial court is reversed. Costs of appeal are assessed against the appellee, Bobby Wall, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE