IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 22, 2016 Session

**CENTRAL BANK v. JEFF WILKES, ET AL.**

**Appeal from the Chancery Court for Hardin County
No. CH179   Donald E. Parish, Judge**

_____

**No. W2015-02399-COA-R3-CV – Filed July 21, 2016**

_____

This case arises from a delinquent loan. Appellant is one of the principals of a development company that obtained a loan in the amount of $250,000 from Appellee bank. Appellant was allegedly unaware of this loan. Subsequent to the $250,000 loan, Appellee bank gave the company another loan in the amount of $300,000, which all of the company's principals, including Appellant, personally guaranteed. The guaranty agreement provided that the principals would personally guarantee all of the company's debts which "may now or at any time hereafter" be owed to the Appellee bank. One of the company's other principals paid the $300,000 loan in full. A year later, Appellee bank brought suit against all three principals for the $250,000 loan. The trial court granted summary judgment in favor of the Appellee bank. Appellant appeals. Affirmed and remanded.

**Tenn. R. App. P. 3; Judgment of the Chancery Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and WILLIAM B. ACREE, SP. J., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Fred Tull.

Terry Abernathy, Selmer, Tennessee, for the appellee, Central Bank.

**OPINION**

**I. Background**

The facts of this case are not in dispute. Jeff Wilkes, Leon Easley, and Fred Tull are the principals of Riverstone Estate Utilities, Inc. ("Riverstone"). On November 10, 2008, Mr. Wilkes obtained a $250,000 loan on Riverstone's behalf from Central Bank ("the bank" or "Appellee"). Mr. Wilkes personally guaranteed this loan, but Messrs. Easley and Tull had no knowledge of the loan.[1] On March 25, 2010, Central Bank gave Riverstone a second loan in the amount of $300,000. Also on March 25, 2010, Mr. Tull ("Appellant"), in his individual capacity, signed a guaranty agreement ("the agreement") in favor of Central Bank personally guaranteeing Riverstone's obligations. The agreement provided that Appellant would guarantee "to [Central Bank] the payment and performance of each and every debt…which [Riverstone] may now or at any time hereafter owe to [Central Bank] (whether such debt…now exists or is hereafter created or incurred….)" The agreement also provides that the guaranty is "an absolute, unconditional, and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the lender…." Riverstone's other principals, Messrs. Wilks and Easley, also signed individual guarantees in conjunction with the $300,000 loan. These guaranty agreements contained identical language to that set out above.

Sometime in 2012, Central Bank discovered its president at the time had been engaging in questionable business practices.[2] He left the bank shortly after this discovery, and Bob Adkisson became interim president of Central Bank in April of 2012. Because of the former president's activities, regulators from the Federal Deposit Insurance Corporation ("FDIC") began overseeing Central Bank's business. As a result of the FDIC's involvement, Mr. Adkisson began efforts to collect on several of the loans the bank's former president had made during his tenure, including both of the loans made to Riverstone. Shortly after his appointment as interim president, Mr. Adkisson engaged in talks with all of Riverstone's principals regarding how Riverstone would remain current on its debts. On May 24, 2012, Mr. Easley tendered a check to Central Bank for $321,495.02, reflecting the principal amount of the debt, penalties, and interest on the $300,000 loan.

On July 30, 2013, Central Bank filed its complaint against Messrs. Tull, Wilkes, and Easley, seeking a judgment for the principal amount of the $250,000 loan plus penalties and interest. Central Bank relied on the language of the guaranty agreement to affix liability for the $250,000 loan to Riverstone's principals. On September 30, 2013, Mr. Tull filed his answer and counter-complaint, asserting various defenses including unclean hands and accord and satisfaction and asserting a claim for fraud against Central Bank.

---

[1] It is unclear from the record whether Messrs. Easley and Tull were principals of Riverstone when Mr. Wilkes obtained the $250,000 loan on Riverstone's behalf.

[2] The record does not reveal the exact nature of the former president's actions. Regardless, they are irrelevant to this appeal.

On June 20, 2014, the bank filed a motion for summary judgment on its claims against Mr. Tull. On August 29, 2014, Mr. Tull filed his response to the bank's motion for summary judgment. The trial court heard the motion for summary judgment on April 27, 2015. On May 27, 2015, the trial court entered an order granting the bank's motion for summary judgment. On October 6, 2015, the trial court entered a judgment against Mr. Tull in the amount of $344,023.23. Mr. Tull appealed on October 26, 2015.[3]

## II. Issue

The sole issue in this appeal is whether the trial court erred in granting Appellee's motion for summary judgment.

## III. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment *de novo*, without a presumption of correctness. ***Rye v. Women's Care Center of Memphis, MPLLC***, 477 S.W.3d 235, 250 (Tenn. 2015) (citing ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997)). "In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." ***Id.*** (citing ***Estate of Brown***, 402 S.W.3d 193, 198 (Tenn. 2013)).

## IV. Analysis

In appealing the grant of summary judgment, Appellant contends that the trial court erred because the Appellee failed to fulfill an alleged duty to inform him of any and all debts he was assuming when he signed the guaranty agreement for the $300,000. Consequently, Appellant argues, because Appellee did not inform him of any of Riverstone's previously existing debts, he cannot be held liable under the agreement for the $250,000 debt. Appellee argues that it had no duty to inform Appellant of prior debts.

Appellant does not argue that there are any material facts in dispute, nor do we find any disputed material facts from the record. Accordingly, we need only examine whether Appellant is liable for the $250,000 loan under the terms of the guaranty agreement as a matter of law. "We first note that guarantors are not favored under [Tennessee] law." ***Galleria Associates, L.P. v. Mogk***, 34 S.W.3d 874, 876 (Tenn. Ct. App. 2000) (citing ***Wilson v. Kellwood Co.***, 817 S.W.2d 313, 318 (Tenn. Ct. App. 1991)). "In order to facilitate the extension of credit, Tennessee does not favor guarantors and will construe a guaranty against

---

[3] Mr. Easley has filed a separate appeal in this case. *See* case No. W2015-02079-COA-R3-CV.

the guarantor as strongly as the language will permit." *Suntrust Bank v. Dorrough*, 59 S.W.3d 153, 156 (Tenn. Ct. App. 2001). "In addition, a guarantor in a commercial transaction is to be held to the full extent of his engagements and the words of the guaranty will be taken as strongly against the guarantor as the sense will admit." *Galleria*, 34 S.W.3d at 876 (citing *Wilson*, 817 S.W.2d at 318). However, "[w]here the guaranty is a continuing guaranty, there is no obligation to give notice to the guarantor that new obligations are being incurred for which the guarantor will be liable, absent a contractual undertaking to do so." *Suntrust Bank*, 59 S.W.3d at 156 (citing *Third National Bank in Nashville v. Friend*, 626 S.W.2d 464 (Tenn. Ct. App. 1981)). "While the cardinal rule in the construction of contracts is to ascertain the intention of the parties, where the contract is plain and unambiguous, the Court's function is to interpret the contract as written according to its plain terms." *Suntrust Bank*, 59 S.W.3d at 158 (internal citations omitted).

Essentially, Appellant's argument is that he cannot be held liable under the agreement because Appellee breached its duty to inform him of the existence of any antecedent debts before he signed the guaranty agreement. However, this Court has previously held that a lender need not inform a guarantor of any antecedent debts before the guarantor signs a guaranty agreement. In *Volunteer State Bank v. Dreamer Productions, Inc.*, 749 S.W.2d 744 (Tenn. Ct. App. 1987), the guarantor executed a guaranty agreement containing the language that the guarantor "hereby guarantee(s) prompt payment when due or at any time thereafter of any and all indebtedness or obligations…upon which the Guaranteed is now or may hereafter, at any time and from time to time, or for any one or more purposes, become indebted, obligated or bound to BANK." *Volunteer State Bank*, 749 S.W.2d at 746. Based on this language, the *Volunteer* Court concluded that the guaranty agreement encompassed antecedent debts. *Id.* at 747. The *Volunteer* Court also concluded that the bank was not required to "inform a guarantor of debts in existence at the time of the execution of the guaranty for those debts to be guaranteed. The language of the guaranty is specific." *Id.*

The guaranty agreement language in the instant case is analogous to the guaranty agreement language in *Volunteer State Bank*. The agreement provides that Appellant will guarantee to "[Central Bank] the payment and performance of each and every debt…which [Riverstone] *may now* or at any time hereafter owe to [Central Bank] (whether such debt…now exists or is hereafter created or incurred….)" (emphasis added). This language is plain and unambiguous and clearly provides that Appellant guaranteed both existing and future debts. It is undisputed that the $250,000 debt existed at the time Appellant executed the guaranty agreement. As in the *Volunteer* case, where the liability triggering language in the guaranty agreement included debts that were "now" owed, the inclusion of the language "now exists" in this case makes Appellant liable for the $250,000 debt. The language clearly encompasses existing or antecedent debts. Because the language was clear and unambiguous, the bank was under no duty to inform Appellant of the existing debt. Appellant has not cited, nor does our research reveal, any Tennessee authority that requires a lending institution to inform a guarantor of antecedent debts when the guarantor signs a

guaranty agreement.

Therefore, we conclude, under the plain language of the guaranty agreement, that Appellant is liable for the $250,000 loan made to Riverstone and that Appellee was not under a duty to inform Appellant of the existence of any existing debts. Because there are no material disputes of fact, and because we conclude as a matter of law that the language of the guaranty agreement clearly shows that Appellant is liable for the $250,000 loan, we conclude that Appellee satisfied the requirements of Tennessee Rule of Procedure 56. We, therefore, affirm the judgment of the trial court.

## V. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are taxed to the Appellant, Fred Tull, and his surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE